THE HARTFORD COURANT COMPANY ET AL. *v.*
FREEDOM OF INFORMATION COMMISSION
(SC 16568)

Borden, Norcott, Katz, Vertefeuille and Zarella, Js.

Argued January 18—officially released July 23, 2002

*Ralph G. Elliot,* with whom, on the brief, was *Stephanie S. Abrutyn,* for the appellants (plaintiffs).

*Clifton A. Leonhardt,* for the appellee (defendant).

*Matthew B. Beizer,* assistant attorney general, with whom, on the brief, was *Richard Blumenthal,* attorney general, for the appellee (intervening defendant).

*Opinion*

VERTEFEUILLE, J. The dispositive issue in this appeal is whether the fee for producing an electronic copy of certain criminal conviction information from the defendant department of public safety (department)[1] should be calculated pursuant to the fee provision of the Freedom of Information Act (act), General

---

[1] The named defendant, the freedom of information commission (commission), did not participate in the appeal.

Statutes § 1-212 (b),[2] or pursuant to General Statutes § 29-11 (c),[3] a statute establishing fees generally to be charged by the department for services it provides. We conclude that the fee for producing the copy must be calculated pursuant to § 1-212 (b). We therefore reverse the judgment of the trial court.

The named plaintiff, The Hartford Courant Company, and the plaintiff Jack Dolan, one of its reporters, appealed to the Appellate Court from the judgment of

[2] General Statutes § 1-212 (b) provides: "The fee for any copy provided in accordance with subsection (a) of section 1-211 shall not exceed the cost thereof to the public agency. In determining such costs for a copy, other than for a printout which exists at the time that the agency responds to the request for such copy, an agency may include only:

"(1) An amount equal to the hourly salary attributed to all agency employees engaged in providing the requested computer-stored public record, including their time performing the formatting or programming functions necessary to provide the copy as requested, but not including search or retrieval costs except as provided in subdivision (4) of this subsection;

"(2) An amount equal to the cost to the agency of engaging an outside professional electronic copying service to provide such copying services, if such service is necessary to provide the copying as requested;

"(3) The actual cost of the storage devices or media provided to the person making the request in complying with such request; and

"(4) The computer time charges incurred by the agency in providing the requested computer-stored public record where another agency or contractor provides the agency with computer storage and retrieval services. Notwithstanding any other provision of this section, the fee for any copy of the names of registered voters shall not exceed three cents per name delivered or the cost thereof to the public agency, as determined pursuant to this subsection, whichever is less. The Department of Information Technology shall monitor the calculation of the fees charged for copies of computer-stored public records to ensure that such fees are reasonable and consistent among agencies."

[3] General Statutes § 29-11 (c) provides: "The Commissioner of Public Safety shall charge the following fees for the service indicated: (1) Name search, eighteen dollars; (2) fingerprint search, twenty-five dollars; (3) personal record search, twenty-five dollars; (4) letters of good conduct search, twenty-five dollars; (5) bar association search, twenty-five dollars; (6) fingerprinting, five dollars; (7) criminal history record information search, twenty-five dollars. Except as provided in subsection (b) of this section, the provisions of this subsection shall not apply to any federal, state or municipal agency."

the trial court dismissing their appeal from the commission's decision that § 29-11 (c) governed the fee for producing the electronic copy they had requested.[4] We transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

The following facts and procedural history are relevant to our resolution of this appeal. Pursuant to the act, the plaintiff requested from the department an electronic copy of the public portion of all of the department's criminal history records for all of the adults in those records. Specifically, the plaintiff sought "a digital copy of all of the fields of information typically produced on a Bureau of Identification rap sheet for every adult within the database" on either a tape or CD-ROM. In accordance with § 1-212 (b), the plaintiff agreed to pay the department a fee equal to the cost the department would incur in producing the electronic copy of the database. In response to this request, the department informed the plaintiff that the fee for complying with this request would be $20,375,000 as calculated pursuant to § 29-11 (c). The department arrived at that figure by multiplying the number of individual records contained in the database (815,000) by the $25 fee per search mandated by § 29-11 (c) (7). The plaintiff subsequently filed a complaint with the commission, claiming that the fee to be charged should be governed by General Statutes §§ 1-211 (a)[5] and 1-212 (b) of the act, rather than by § 29-11 (c).

---

[4] For convenience, we refer hereinafter to The Hartford Courant Company and Dolan jointly as the plaintiff.

[5] General Statutes § 1-211 (a) provides: "Any public agency which maintains public records in a computer storage system shall provide, to any person making a request pursuant to the Freedom of Information Act, a copy of any nonexempt data contained in such records, properly identified, on paper, disk, tape or any other electronic storage device or medium requested by the person, if the agency can reasonably make such copy or have such copy made. Except as otherwise provided by state statute, the cost for providing a copy of such data shall be in accordance with the provisions of section 1-212."

The plaintiff argued before the commission that the fee should be calculated pursuant to § 1-212 (b), which requires that the fee for an electronic copy of public information stored on a computer "shall not exceed the cost thereof to the public agency." The commission, relying on the language "[e]xcept as otherwise provided by state statute" contained in § 1-211 (a), rejected this argument. The commission found that the plaintiff's request was a "criminal history record information search" within the meaning of § 29-11 (c), and that § 29-11 (c) constituted an exception to the act. The commission, therefore, determined that the proper fee for the plaintiff's request was $20,375,000, calculated pursuant to § 29-11 (c) in the manner described previously.

The plaintiff appealed from the decision of the commission to the trial court, which affirmed the commission's determination that the fee for the copy requested by the plaintiff was governed by § 29-11 rather than § 1-212 (b). The trial court reached this conclusion, however, pursuant to reasoning different from that relied upon by the commission. The trial court determined that the plaintiff's request required the department to create a document that previously did not exist. The trial court based this ruling on testimony of department employees, who testified that the department did not have the immediate technological capability of producing a digital copy of the public portion of the entire database of criminal conviction information. Those employees testified that, in order for the department to comply with the plaintiff's request, a new computer program would have to be written to separate the public portion of the conviction information from the nondisclosable portion of that information, and to place the information in a usable digital format. The trial court concluded that such a task was beyond the scope of the obligations imposed on the department by the act.

The trial court further concluded that, even if the department had been required by the act to create a program to comply with the plaintiff's request, there was insufficient evidence in the record to support the conclusion that the plaintiff's request was reasonable, a finding required by § 1-211 (a). See footnote 5 of this opinion. The trial court based its finding on testimony given by employees of the department that writing a new program to comply with the plaintiff's request would take "weeks" of effort.

Having determined that the fee to be charged for complying with the plaintiff's request was not governed by the act, the trial court concluded that § 29-11 was "the appropriate alternative and exception to [the act]." Accordingly, the trial court upheld the commission's determination that the appropriate fee for producing the requested records was $20,375,000, calculated in accordance with § 29-11 (c) (7). This appeal followed.

I

The first issue that we address is whether the trial court properly determined that the fee for producing an electronic copy of the requested criminal conviction information is governed by § 29-11 (c) instead of § 1-212 (b) because the plaintiff's request required the defendant to create a document that previously did not exist. The plaintiff argues that the conclusion of the trial court was improper because the plaintiff's request does not require the creation of a new document but instead requires only that information already in the department's computer storage system be formatted for disclosure in the form requested by the plaintiff. We agree.

The issue of whether the plaintiff's request, which requires the development of a new computer program, falls outside the provisions of the act presents a question of statutory construction. Therefore, our review of

the trial court's decision is plenary. See *Vibert* v. *Board of Education*, 260 Conn. 167, 170, 793 A.2d 1076 (2002).

We begin with the language of the statutes in question. Section 1-211 (a) provides that "[a]ny public agency which maintains public records in a computer storage system shall provide, to any person making a request pursuant to the Freedom of Information Act, a copy of *any nonexempt data* contained in such records, properly identified, on paper, *disk, tape or any other electronic storage device or medium requested by the person,* if the agency can reasonably make such copy or have such copy made. Except as otherwise provided by state statute, the cost for providing a copy of such data shall be in accordance with the provisions of section 1-212." (Emphasis added.) Section 1-212 (b) provides in relevant part: "The fee for any copy provided in accordance with subsection (a) of section 1-211 shall not exceed the cost thereof to the public agency. In determining such costs for a copy, other than for a printout which exists at the time that the agency responds to the request for such copy, an agency may include only: (1) An amount equal to the hourly salary attributed to all agency employees engaged in providing the requested computer-stored public record, *including their time performing the formatting or programming functions necessary to provide the copy as requested,* but not including search or retrieval costs except as provided in subdivision (4) of this subsection; [or] (2) An amount equal to the cost to the agency of engaging an outside professional electronic copying service to provide such copying services, if such service is necessary to provide the copying as requested . . . ." (Emphasis added.)

The plaintiff's request for the criminal conviction information in either tape or CD-ROM format clearly falls within the broad language of § 1-211 (a), specifically the language requiring the disclosure of "any non-

exempt data . . . ." The flexibility and breadth of this statute is further illustrated by the language providing that a copy of such data shall be provided "on paper, disk, tape or any other electronic storage device or medium requested by the person . . . ." General Statutes § 1-211 (a). There is no indication in the language of § 1-211 that the scope of that statute is restricted to document formats currently in existence. Indeed, such a conclusion is belied by the fee provisions contained in § 1-212 (b), which permits an agency to include in its fee for a request pursuant to § 1-211 (a) "[a]n amount equal to the hourly salary attributed to all agency employees engaged in providing the requested computer-stored public record, *including their time performing the formatting or programming functions necessary to provide the copy as requested*"; (emphasis added) General Statutes § 1-212 (b) (1); or "[a]n amount equal to the cost to the agency of engaging an outside professional electronic copying service to provide such copying services, if such service is necessary to provide the copying as requested . . . ." General Statutes § 1-212 (b) (2). Section 1-212 (b) contemplates that an agency may be required to perform formatting or programming functions, or that the agency may contract with an outside entity to perform such functions, in order to comply with requests pursuant to the act.

Any possible uncertainty in the meaning of the statute is dispelled by the legislative history of §§ 1-211 and 1-212. While discussing the bill that eventually became No. 91-347 of the 1991 Public Acts, which made § 1-211 (a) applicable to all nonexempt data contained in public records and added the previously referenced fee provisions of § 1-212 (b), Representative Leslie Young made the following comment: "It was referred to earlier in some questions by Representative [Alice] Meyer that some towns had less than the most well designed computer systems for providing information. They're either

hand designed or hand programmed, or what have you and as a result, it may be that they have computer tapes or disks or storage devices, whatever, *that combine both exempt and non-exempt information.* So, under the situation where they were asked to provide information, would they have the right to simply edit the disk and produce printouts of the non-exempt information that they're supposed to give?" (Emphasis added.) 34 H.R. Proc., Pt. 20, 1991 Sess., p. 7477.

Representative William Kiner[6] responded: "[I]f the person requesting the information were to be satisfied with a computer printout then the answer is yes. However, as the gentleman knows, this bill goes beyond the paper chase if you will and if the person is not satisfied with the computer printout but requests information in other media, whether it be a disk or tape, whatever, if the agency can reasonably delineate, separate, if you will, the exempt from the non-exempt, then that disk or whatever that media that the person's requesting the information in, is to be given to that person. *If the agency cannot comply because the agency does not have the computer hardware, the computer capabilities of doing that, the agency does have the ability to contract this information out and charge the person for it."* (Emphasis added.) Id., pp. 7477–78.

It is thus clear that the legislature envisioned the precise issue before this court, namely, a situation in which an agency cannot comply with a request for information because it does not have the technological capability to separate exempt from nonexempt data. The legislative history of §§ 1-211 (a) and 1-212 (b) unequivocally indicates that such a request does not fall outside the scope of the act. Rather, pursuant to the act, the

---

[6] Representative Kiner was cochairperson of the government administration and elections committee, which was responsible for the drafting of Public Act 91-347.

disclosing agency must comply with such a request either by developing a program or contracting with an outside entity to develop a program, provided that the requesting party is willing to bear the attendant costs.

Finally, our conclusion that the plaintiff's request comes within the scope of § 1-211 (a) and does not require the creation of a new document is bolstered by our interpretation of the act in *Maher* v. *Freedom of Information Commission*, 192 Conn. 310, 472 A.2d 321 (1984). In *Maher*, the defendant newspaper, pursuant to the act, requested from the plaintiff department of income maintenance certain information regarding drugs prescribed by physicians pursuant to the medicaid program. Id., 312. The commission ordered the disclosure of the information requested by the defendant, and the trial court affirmed the decision of the commission. Id. In this court, the plaintiff argued that the act did not require disclosure of the information because, although the plaintiff was in possession of the information requested, a new computer program would have to be produced to enable the plaintiff to comply with the defendant's request. Id., 315.

The court in *Maher* rejected that argument as being inconsistent with the statutory predecessor of § 1-211 (a) then in effect, General Statutes (Rev. to 1979) § 1-19a.[7] Id., 315–16. After noting that this argument was inconsistent with the broad language of that statute, the court stated: "Where, as here, *the information sought is presently stored in the agency's data base, and the cost of the new program is to be borne by the person seeking the information,* an order compelling production of computer tapes is within the powers statutorily con-

[7] At the time of the request at issue in *Maher*, General Statutes (Rev. to 1979) § 1-19a provided: "Any public agency which maintains its records in a computer storage system shall provide a printout of any data properly identified."

ferred upon the [commission]." (Emphasis added.) *Maher* v. *Freedom of Information,* supra, 192 Conn. 316.

This reasoning is equally applicable to the facts of the present case. As in *Maher,* the department is in possession of the information requested, and the party seeking the information is willing to pay the cost of the new program that is required to comply with the request. The fact that the department is required to develop a new program, therefore, does not, in and of itself, remove the plaintiff's request from the scope of the act.

We thus conclude, from the language and legislative history of §§ 1-211 (a) and 1-212 (b), and our interpretation of the predecessor to § 1-211 (a) in *Maher,* that the trial court in the present case improperly predicated its conclusion that the fee for the plaintiff's request was not governed by the act on an improper determination that the department was required to create a new document.

## II

We turn next to the issue of whether the trial court properly concluded that the plaintiff's request did not fall within the ambit of § 1-211 (b) because it was not reasonable. The plaintiff claims that the trial court applied an incorrect legal standard in resolving this issue. Specifically, the plaintiff claims that the trial court improperly placed the burden on the plaintiff of demonstrating that the copy reasonably could be made. The department claims that the trial court properly required it to show that the copy reasonably could not be made. We agree with the plaintiff.

We begin by setting forth the standard of review that governs our examination of the plaintiff's claim. Because this issue requires that we decide whether the trial court applied the correct legal standard in

determining whether the plaintiff's request for information was reasonable, our review is plenary. See, e.g., *Wagner* v. *Clark Equipment Co.*, 259 Conn. 114, 122, 788 A.2d 83 (2002).

Resolution of this issue turns on whether the trial court properly applied § 1-211 (a) in concluding that the plaintiff's request for information was unreasonable. That statute provides in relevant part: "Any public agency which maintains public records in a computer storage system shall provide, to any person making a request pursuant to the Freedom of Information Act, a copy of any nonexempt data contained in such records, properly identified, on paper, disk, tape or any other electronic storage device or medium requested by the person, *if the agency can reasonably make such copy or have such copy made. . . .*" (Emphasis added.) General Statutes § 1-211 (a). The parties do not dispute that § 1-211 (a) places the burden on the public agency to demonstrate that it cannot reasonably make the copy requested. Our inquiry, therefore, is limited to the question of whether the trial court, in accordance with § 1-211 (a), did in fact place the burden on the department to show that it reasonably could not provide the copy requested.

The trial court's analysis of this issue consists of the following three sentences in its memorandum of decision: "[T]here is insufficient evidence in the record to support the conclusion that the request was 'reasonable.' While the department witnesses indicated that to write the program would be 'possible,' they also stated that '[w]e're talking weeks of effort to look at the database.' This is not merely reworking existing information into a technologically acceptable format for distribution."

The trial court, by couching its analysis in terms of whether there was sufficient evidence to support the

conclusion that the plaintiff's request was reasonable, implicitly placed the burden of proving reasonableness on the plaintiff. The trial court never discussed the evidence presented before the commission in the context of the department's burden of demonstrating that it reasonably could not make the requested copy or have it made. Indeed, the trial court never acknowledged that the department bore the burden of proof with respect to reasonableness. We therefore conclude that the trial court improperly placed upon the plaintiff the burden of proving the reasonableness of making the copy requested.

### III

Finally, we address the alternate ground for affirming the judgment of the trial court that was raised by the department. The department argues, consistent with the decision of the commission,[8] that the plaintiff's request entailed a criminal history record information search within the meaning of § 29-11 (c), and that the fee for the plaintiff's request should therefore be calculated pursuant to that statute. The plaintiff counters that § 1-212, the fee provision of the act, applies rather than § 29-11 (c), because the plaintiff's request was for a digital copy of the department's criminal conviction database rather than a search for specific criminal convictions. We agree with the plaintiff.

The issue of whether the commission properly concluded that the plaintiff's request was a criminal conviction history search within the meaning of § 29-11 (c) presents an issue of statutory construction and therefore is a question of law. "Cases that present pure questions of law . . . invoke a broader standard of review than is ordinarily involved in deciding whether, in light

---

[8] The trial court relied solely on the two grounds previously addressed herein in reaching its decision and did not address the merits of the commission's reasoning.

of the evidence, the agency has acted unreasonably, arbitrarily, illegally or in abuse of its discretion. . . . We have determined, therefore, that the traditional deference accorded to an agency's interpretation of a statutory term is unwarranted when the construction of a statute . . . has not previously been subjected to judicial scrutiny [or to] . . . a governmental agency's time-tested interpretation . . . ." (Internal quotation marks omitted.) *Schiano* v. *Bliss Exterminating Co.*, 260 Conn. 21, 33–34, 792 A.2d 835 (2002). The issue before us has not previously been subjected to judicial scrutiny, and the defendant has not argued that the commission's interpretation of § 29-11 (c) is time-tested. Accordingly, we exercise plenary review. See id., 34.

When construing a statute, "[o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In seeking to discern that intent, we look to the words of the statute itself, to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter." (Internal quotation marks omitted.) *Donahue* v. *Southington*, 259 Conn. 782, 788, 792 A.2d 76 (2002).

We begin with an examination of the pertinent language in §§ 1-211 (a) and 29-11 (c), respectively. Section 1-211 (a) provides that "[a]ny public agency which maintains public records in a computer storage system *shall provide*, to any person making a request pursuant to the Freedom of Information Act, a copy of any nonexempt data contained in such records, properly identified, on paper, *disk, tape or any other electronic storage device or medium requested by the person* . . . ." (Emphasis added.) The plaintiff sought a digital copy of the public portion of the department's database of adult criminal conviction information, on a tape or CD-

ROM. It is undisputed that the records sought by the plaintiff are "public records" within the meaning of § 1-211 (a) and that the department maintains these records in a computer storage system. Therefore, § 1-211 (a) specifically governs both the subject matter of the plaintiff's request as well as the medium in which the information is to be delivered. Because the plaintiff's request falls within the ambit of § 1-211 (a), the fee provision of the act, which is contained in § 1-212 (b), provides the appropriate method for calculating the fee for producing the electronic copy requested by the plaintiff.

The department does not dispute that the plaintiff's request otherwise falls within the language of § 1-211 (a). The department contends, however, that resolution of the issue presently before us is governed by the canon of statutory construction that "[w]here statutes contain specific and general references covering the same subject matter, the specific references prevail over the general." *Galvin* v. *Freedom of Information Commission*, 201 Conn. 448, 456, 518 A.2d 64 (1986). Accordingly, the department argues that the specific provision for a "criminal history record information search" contained in § 29-11 (c) (7) supersedes the general provisions of the act with regard to the plaintiff's request. We disagree.

By its plain language, § 29-11 (c) is not applicable to the plaintiff's request for public records in this case. Section 29-11 (c) (7) establishes the fee for a "criminal history record information *search* . . . ." (Emphasis added.) The statute necessarily contemplates a request for the criminal history of a particular individual or individuals. This is made clear in the department's written response to the plaintiff's request for information. In a letter informing the plaintiff that the fee for its request would be calculated pursuant to § 29-11 (c), the department stated: "[W]e require the date of birth or social security number of each *individual* whose name

is to be searched. If you have *searches* that you would like this agency to conduct for *specific individuals*, kindly remit the appropriate fee together with the additional information requested above so that we may process your request." (Emphasis added.) The plaintiff, however, did not request that a search be performed for individual criminal history information. Instead, the plaintiff requested a digital copy of the public portion of the department's database containing *all* adult criminal conviction records. Thus, the plaintiff's request plainly is incompatible with the concept of a search for the criminal histories of specific individuals.

In contrast, § 1-211 (a), as set forth previously herein, specifically provides not only for the subject matter but also the specific medium of the plaintiff's request. Therefore, we conclude that the plaintiff's request falls within the purview of the act, and that the fee for the plaintiff's request should be calculated pursuant to § 1-212 (b).

Were we to hold otherwise, the fee for the plaintiff's request would be $20,375,000, a result that would have the practical effect of denying the plaintiff access to records that, by statute, must be made available to the public.[9] Such a result would be inconsistent both with the act's broad policy favoring the disclosure of information and with the well established canon of statutory construction "that those who promulgate statutes or rules do not intend to promulgate statutes or rules that lead to absurd consequences or bizarre results." *State* v. *Siano*, 216 Conn. 273, 278, 579 A.2d 79 (1990).

The judgment is reversed and the case is remanded to the trial court with direction to render judgment sustaining the plaintiff's appeal from the decision of the commission.

In this opinion the other justices concurred.

---

[9] General Statutes § 54-142k (b) provides that "[c]onviction information shall be available to the public for any purpose."