# WALTER HASSELT *v.* LUFTHANSA GERMAN AIRLINES ET AL.
## (SC 16739)

Borden, Norcott, Katz, Palmer and Vertefeuille, Js.

Argued December 4, 2002—officially released February 18, 2003

*Michelle D. Truglia*, assistant attorney general, with whom were *William J. McCullough*, assistant attorney general, and, on the brief, *Richard Blumenthal*, attorney general, for the appellant (defendant second injury fund).

*James D. Moran, Jr.*, with whom was *James L. Sullivan*, for the appellees (named defendant et al.).

*Opinion*

KATZ, J. The sole issue in this appeal[1] is whether, under General Statutes § 31-307a (c),[2] the defendant

[1] The defendant second injury fund appealed from the decision of the workers' compensation review board to the Appellate Court pursuant to General Statutes § 31-301b. We then transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

[2] General Statutes § 31-307a (c) provides: "On and after October 1, 1997, the weekly compensation rate of each employee entitled to receive compensation under section 31-307 as a result of an injury sustained on or after July 1, 1993, which totally incapacitates the employee permanently, shall be adjusted as provided in this subsection as of October 1, 1997, or the October first following the injury date, whichever is later, and annually on each subsequent October first, to provide the injured employee with a cost-of-living adjustment in his weekly compensation rate as determined as of the date of injury under section 31-309. If the maximum weekly compensation rate, as determined under the provisions of said section 31-309, to be effective as of any October first following the date of the injury, is greater than the maximum weekly compensation rate prevailing as of the date of injury, the weekly compensation rate which the injured employee was entitled to receive as of the date of injury shall be increased by the percentage of the increase in the maximum weekly compensation rate required by the provisions of said section 31-309 from the date of the injury to such October first. The cost-of-living adjustments provided under this subdivision shall be paid by the employer without any order or award from the commissioner. The adjustments shall apply to each payment made in the next succeeding twelve-month period commencing with October 1, 1997, or the October first

second injury fund (fund) is required to reimburse employers for all cost-of-living adjustments (COLAs) paid to qualifying employees sustaining injuries within the time period prescribed by the statute, thereby exposing the fund to an indeterminate liability, or whether the fund's liability is limited to COLAs accrued during that time period. The defendant fund appeals from the decision of the workers' compensation review board (board) affirming the decision of the workers' compensation commissioner for the seventh district (commissioner), which required the fund to reimburse the defendant Lufthansa German Airlines (Lufthansa), the employer of the plaintiff,[3] Walter Hasselt, for both retroactive COLAs Lufthansa had paid to the plaintiff, as well as prospective COLAs accrued. The fund claims that the board improperly construed § 31-307a (c) to require it to reimburse Lufthansa for all prospective COLAs accruing after October 1, 1997. We affirm the decision of the board.

next succeeding the date of injury, whichever is later. With respect to any employee receiving benefits on October 1, 1997, with respect to any such injury occurring on or after July 1, 1993, and before October 1, 1997, or with respect to any employee who was adjudicated to be totally incapacitated permanently subsequent to the date of his injury or is totally incapacitated permanently due to the fact that the employee has been totally incapacitated by such an injury for a period of five years or more, such benefit shall be recalculated to October 1, 1997, to the date of such adjudication or to the end of such five-year period, as the case may be, as if such benefits had been subject to recalculation annually under the provisions of this subsection. The difference between the amount of any benefits which would have been paid to such employee if such benefits had been subject to such recalculation and the actual amount of benefits paid during the period between such injury and such recalculation shall be paid to the dependent not later than December 1, 1997, or thirty days after such adjudication or the end of such period, as the case may be, in a lump-sum payment. The employer or his insurer shall be reimbursed by the Second Injury Fund, as provided in section 31-354, for adjustments, including lump-sum payments, payable under this subsection for compensable injuries occurring on or after July 1, 1993, and before October 1, 1997, upon presentation of any vouchers and information that the Treasurer shall require."

[3] The plaintiff is not a party to this appeal.

The record reveals the following undisputed facts. On July 6, 1994, the plaintiff suffered a compensable back injury during the course of his employment with Lufthansa. The plaintiff has received temporary total disability benefits pursuant to a voluntary agreement with Lufthansa since December 7, 1994. Sometime between July, 1999, and July, 2000,[4] the plaintiff filed with the commissioner a request, pursuant to § 31-307a (c), for a lump sum COLA payment retroactive to the date of his injury and for any prospective COLAs accrued.

At a hearing on the plaintiff's request, the parties presented to the trial commissioner the issue of whether, under § 31-307a (c), the insurance carrier or the fund is responsible for COLAs payable to an injured employee who had been temporarily totally disabled for five years or more. Lufthansa contended that, once a claimant had met the prescribed five year disability period; see footnote 2 of this opinion; the fund was required to reimburse Lufthansa for any COLAs it had paid for that five year period, *and* for any future COLAs accrued after that period. Conversely, the fund contended that the statute limited its liability to retroactive COLAs paid by an employer for the specific time period set forth in the statute, namely, July 1, 1993, through October 1, 1997. The commissioner determined that the language of the statute imposed no such time limitation on the fund's reimbursement obligations. Accordingly, the commissioner ordered that the fund reimburse Lufthansa for all COLAs already paid or payable in the future to the plaintiff.

[4] The record does not reflect clearly when the plaintiff filed his request for the COLAs. We infer, however, based on the date the plaintiff sustained his injury, the five year qualification period prescribed by § 31-307a (c); see footnote 2 of this opinion; and the date of the hearing on this request, that the plaintiff filed the request sometime after July 6, 1999, five years after the date of his injury, and before July 13, 2000, the date of the hearing before the commissioner on this request.

Thereafter, pursuant to General Statutes § 31-301, the fund filed an appeal from the commissioner's decision with the board,[5] which affirmed the commissioner's decision. Specifically, the board rejected the fund's contention that, in light of the legislature's intention to limit the fund's liability, as expressed in certain amendments to the workers' compensation scheme; see Public Acts 1993, No. 93-228, §§ 15 through 20; Public Acts 1995, No. 95-277, §§ 2, 3, 9 and 18; § 31-307a (c) should be construed to limit the fund's liability to COLAs accrued for the fifty-one months delineated in the statute. The board determined that this intention did not outweigh the plain language of § 31-307a (c) and the "date of injury" rule generally applied under the workers' compensation scheme, both of which supported Lufthansa's position that the fund must reimburse it for all COLAs arising from qualifying injuries sustained between the dates of July 1, 1993, and October 1, 1997. Finally, the board noted that the fund's interpretation would run counter to the rule precluding the legislature from imposing retroactive substantive obligations on persons or corporations. This appeal followed.

On appeal, the fund contends that the statute imposes on it an obligation to reimburse employers only for COLAs that accrue for the period set forth in the statute, "on or after July 1, 1993, and before October 1, 1997 . . . ." General Statutes § 31-307a (c). It further contends that, to the extent that the statute is ambiguous,

[5] The fund filed with the board, concurrently with its appeal, a motion for articulation of the commissioner's decision. Specifically, in its motion for articulation, the fund requested that the commissioner clarify why he had failed to consider certain evidence the fund had presented, namely, the legislative debate on the act ultimately enacted as § 31-307a (c) and a September 10, 1997 memorandum written by Jesse M. Frankl, then chairman of the workers' compensation commission, in which Frankl had interpreted § 31-307a (c). On June 27, 2001, the commissioner filed with the board an articulation, stating, without further explanation, that he had reviewed the evidence and had not found it persuasive.

its legislative history and the reforms that preceded the passage of the act imposing this obligation indicate a legislative intent to limit the fund's obligation in this manner. Finally, the fund contends that we should give deference to a September 10, 1997 memorandum written by Jesse M. Frankl (Frankl memorandum), then chairman of the workers' compensation commission, in which, according to the fund, Frankl interpreted § 31-307a (c) as imposing the obligation to pay COLAs accrued after October 1, 1997, on the employer or its insurer.[6]

As a preliminary matter, we state what is *not* at issue in the present appeal. It is undisputed that, under § 31-307a (c), injured employees, such as the plaintiff, who are totally disabled for a period of five or more years as a result of a work-related injury occurring on or after July 1, 1993, are entitled to COLAs. It further is undisputed that the fund is required to reimburse employers or insurance carriers for COLAs they have paid to those qualifying employees that had accrued for the period of July 1, 1993, through October 1, 1997. Where the parties diverge is on the issue of whether § 31-307a (c) requires the fund to reimburse the insurance carrier based on COLAs payable for a specified *time period*—July 1, 1993, through October 1, 1997— or whether the statute requires reimbursement for all COLAs accruing based solely on the *date of the injury*, thereby imposing an indeterminate liability on the fund beyond October 1, 1997.

The issue in this appeal, therefore, is one of statutory construction. We first set forth the well established

---

[6] The fund also claims that the commissioner improperly failed to consider and apply material facts in his findings, namely, the legislative history and the Frankl memorandum. The commissioner, however, stated in his articulation that he had considered that evidence, but ultimately found it unpersuasive. See footnote 5 of this opinion. Because we conclude herein that this evidence does not support the fund's interpretation of the statute, we do not address this claim.

principles guiding our review of such an issue. "[A]n agency's factual and discretionary determinations are to be accorded considerable weight by the courts. . . . We have determined, [however], that the traditional deference accorded to an agency's [determination] . . . is unwarranted when the construction of a statute [is at issue and that construction] has not previously been subjected to judicial scrutiny [or to] . . . a governmental agency's time-tested interpretation . . . ." (Internal quotation marks omitted.) *Schiano* v. *Bliss Exterminating Co.*, 260 Conn. 21, 33–34, 792 A.2d 835 (2002); accord *Davis* v. *Norwich*, 232 Conn. 311, 317, 654 A.2d 1221 (1995). Prior to its decision in the present case, the board had not addressed the extent of the fund's liability under § 31-307a (c) for COLA reimbursements.[7] Moreover, the issue is one of first impression for Connecticut courts. Accordingly, we do not accord any particular deference to the conclusion of the board and exercise plenary review. *Laliberte* v. *United Security, Inc.*, 261 Conn. 181, 185, 801 A.2d 783 (2002); *Schiano* v. *Bliss Exterminating Co.*, supra, 34.

Briefly, by way of background, we note that until 1993, qualifying employees were entitled to COLAs for injuries sustained on or after October 1, 1969. See General Statutes (Rev. to 1993) § 31-307a. Effective July 1, 1993, the legislature amended the statute to eliminate COLAs for totally incapacitated employees injured on or after that date. Public Acts 1993, No. 93-228, § 17.

---

[7] Technically, the board had interpreted § 31-307a (c) prior to the present case. In a case decided just prior to, but issued contemporaneously with, the present case; see *Fiorillo* v. *Bridgeport*, No. 4337 CRB-4-01-1 (November 19, 2001); the board construed § 31-307a (c) in the same manner as it had done in the present case. The fund also had appealed from that decision, but this court subsequently dismissed the appeal after the parties agreed that a critical factual premise on which the commissioner's decision was based was in error. For obvious reasons, Lufthansa has not asserted in the present case that the board's decision in *Fiorillo* constitutes a time-tested interpretation warranting deference.

Thereafter, the legislature reversed course, effective October 1, 1997, adding subsection (c) to § 31-307a, which reincorporated COLAs for totally incapacitated employees sustaining injuries on or after July 1, 1993. See Public Acts 1997, No. 97-205, § 4; see also Substitute Senate Bill No. 976, 1997 Sess., § 4 (entitled "An Act Restoring Workers' Compensation Cost-of-Living Adjustments for Widows, Widowers, Orphans and Totally Disabled Workers").

With this background in mind, we begin our analysis with the language of the statute. *Hartford Courant Co. v. Freedom of Information Commission*, 261 Conn. 86, 92, 801 A.2d 759 (2002); *Waterbury v. Washington*, 260 Conn. 506, 531, 800 A.2d 1102 (2002). The main portion of § 31-307a (c) addresses the method of calculating COLAs, sets forth the date or dates on which the employee is entitled to receive COLAs and imposes primary liability for COLAs on the employer or his insurer. The last sentence of the subsection then provides: "The employer or his insurer shall be reimbursed by the Second Injury Fund, as provided in section 31-354, for adjustments, including lump-sum payments, payable under this subsection for compensable injuries occurring on or after July 1, 1993, and before October 1, 1997, upon presentation of any vouchers and information that the Treasurer shall require." General Statutes § 31-307a (c). The fund contends that this sentence must be construed as limiting its liability to only those COLAs accrued on or after July 1, 1993, and before October 1, 1997. We disagree.

We first note that the sentence at issue, read in the light of the ordinary rules of English grammar and sentence structure, compels a construction contrary to that suggested by the fund. See *State v. Burns*, 236 Conn. 18, 24, 670 A.2d 851 (1996); *Gonsalves v. West Haven*, 232 Conn. 17, 22, 653 A.2d 156 (1995). The dates set forth in the sentence modify the term "compensable

injuries," not "adjustments." There is no basis in the plain language of the sentence to construe it as if it provided "adjustments payable on or after July 1, 1993, and before October 1, 1997." Moreover, such a construction would render superfluous the phrase "for compensable injuries occurring on or after" in § 31-307a (c). We generally reject a construction that achieves such a result. See, e.g., *State* v. *Gibbs*, 254 Conn. 578, 602, 758 A.2d 327 (2000) ("It is a basic tenet of statutory construction that the legislature did not intend to enact meaningless provisions. . . . [S]tatutes must be construed, if possible, such that no clause, sentence or word shall be superfluous, void or insignificant . . . ." [Internal quotation marks omitted.]).

Moreover, as the board noted, construing the statute to impose liability on the fund based on the date the injury is sustained, rather than a specific time period, is the construction most consistent with the "date of injury rule." "The date of injury rule is a rule of statutory construction that establishes a presumption that 'new workers' compensation legislation affecting rights and obligations as between the parties . . . applie[s] only to those persons who *received injuries* after the legislation became effective, and not to those injured previously.' *Gil* v. *Courthouse One,* 239 Conn. 676, 685, 687 A.2d 146 (1997)." (Emphasis added.) *Badolato* v. *New Britain,* 250 Conn. 753, 756 n.5, 738 A.2d 618 (1999). "The legislature, [however], may 'override' the date of injury rule as long as it makes its intention clear. *Gil* v. *Courthouse One,* supra, 686." *Hall* v. *Gilbert & Bennett Mfg. Co.,* 241 Conn. 282, 305, 695 A.2d 1051 (1997). In the present case, however, there is no clear expression by the legislature of its intention to override this presumption.

Finally, we note that this last sentence imposes liability on the fund to reimburse employers for "adjustments, *including lump-sum payments* . . . ."

(Emphasis added.) General Statutes § 31-307a (c). Reference to other sentences in this subsection indicate that this distinction imposes liability on the fund for both retroactive and prospective COLAs. Section 31-307a (c) prescribes that, after the five year qualification period is satisfied, an employee is entitled to receive COLAs retroactive to the commencement of that period in a "lump-sum payment."[8] It is clear under this compensation scheme that those lump sum payments are equivalent to retroactive COLA payments, a point which the fund seems to concede. Construing the word "including" according to its ordinary usage, however, must mean that the fund is required as well to reimburse employers for *something* other than those retroactive COLAs paid in a lump sum. See General Statutes § 1-1 ("words . . . shall be construed according to the commonly approved usage of the language"); Merriam-Webster's Collegiate Dictionary (10th Ed. 1993) (defining "include" as "to . . . comprise as a part of a whole"). In our view, by necessary implication, that *something* must be prospective COLAs. In other words, "adjustments" other than those owed retroactively and paid in a lump sum must be adjustments accruing prospectively. Indeed, we can infer no other rational explana-

---

[8] The relevant portion of General Statutes § 31-307a (c) provides: "With respect to any employee receiving benefits on October 1, 1997, with respect to any such injury occurring on or after July 1, 1993, and before October 1, 1997, or with respect to any employee who was adjudicated to be totally incapacitated permanently subsequent to the date of his injury or is totally incapacitated permanently due to the fact that the employee has been totally incapacitated by such an injury for a period of five years or more, such benefit shall be recalculated to October 1, 1997, to the date of such adjudication or to the end of such five-year period, as the case may be, as if such benefits had been subject to recalculation annually under the provisions of this subsection. The difference between the amount of any benefits which would have been paid to such employee if such benefits had been subject to such recalculation and the actual amount of benefits paid during the period between such injury and such recalculation shall be paid to the dependent not later than December 1, 1997, or thirty days after such adjudication or the end of such period, as the case may be, in a lump-sum payment. . . ."

tion for what else the legislature could have intended, and the fund has not provided a rational alternative construction.[9]

The fund, however, draws our attention to the two sentences immediately preceding the sentence at issue here, wherein § 31-307a (c) refers to "recalculation" or "recalculated" benefits. See footnote 8 of this opinion. Those sentences refer to the fact that, upon an employee's qualification for receiving COLAs, the employee's benefits must be recalculated to include COLAs in order to pay the employee any retroactive COLAs accrued. The fund contends that, because the statute prescribes a recalculation of retroactive benefits only, the legislature similarly intended for the last sentence to be construed only to prescribe retroactive liability. In essence, the fund contends that we should construe the phrase "adjustments, including lump-sum payments" included in § 31-307a (c) as if it read "recalculated benefits." This interpretation, however, runs counter to a fundamental tenet of statutory construction that "[t]he use of the different terms . . . within the same statute suggests that the legislature acted with complete awareness of their different meanings . . . and that it intended the terms to have different meanings . . . ." (Citation omitted; internal quotation marks omitted.) *Bruttomesso* v. *Northeastern Connecticut Sexual Assault Crisis Services, Inc.*, 242 Conn. 1, 13, 698 A.2d 795 (1997); accord *Plourde* v. *Liburdi*, 207 Conn. 412, 416, 540 A.2d 1054

[9] At oral argument in this court, the question was posed to the fund as to what other adjustment, beside the lump sum payment to which § 31-307a (c) refers, the fund could be liable for reimbursement under its interpretation of the statute. The only scenario suggested by the fund was a situation in which an employee was entitled to a single adjustment payment, such as when the employee was injured one week prior to October 1, 1997, and, therefore, would be entitled, as of October 1, 1997, to one adjustment payment. In our view, it stretches the imagination to presume the legislature envisioned this isolated incident as the basis for the distinction in § 31-307a (c) providing "adjustments, including lump-sum payments . . . ."

(1988); *Hinchcliffe* v. *American Motors Corp.*, 184 Conn. 607, 613, 440 A.2d 810 (1981), on appeal after remand, 192 Conn. 252, 470 A.2d 1216 (1984).

The fund conceded at oral argument in this court that, under COLAs enacted prior to the 1993–1997 workers' compensation reforms, it is obligated to pay COLAs for the entire period of a claimant's benefits. See, e.g., General Statutes § 31-307a (b). Therefore, it is not irrational to construe § 31-307a (c) as the plain language suggests, thereby imposing similarly prospective liability. See *Hartford Courant Co.* v. *Freedom of Information Commission*, supra, 261 Conn. 101 ("well established canon of statutory construction 'that those who promulgate statutes or rules do not intend to promulgate statutes or rules that lead to absurd consequences or bizarre results' "); *Vibert* v. *Board of Education*, 260 Conn. 167, 177, 793 A.2d 1076 (2002) ("[w]e will not interpret [a statute] to reach . . . a bizarre or absurd result"). The fund contends, however, that the legislative history of the statute and the 1993–1997 reforms indicate a different legislative intent— that is, to limit the fund's liability, rather than expose it to an indeterminate liability. Accordingly, we next turn to the legislative history.

The bill reinstating COLAs effective October 1, 1997, as initially raised in the labor and public employees committee, differed in several respects from the bill ultimately enacted. See Raised Bill No. 6627, 1997 Sess., § 2. The raised bill contained no requirement that the employee receive a retroactive lump sum payment for COLAs accrued prior to October 1, 1997. See id. It did provide, however, that "[t]he cost of the adjustments shall be paid by the employer or his insurance carrier who shall be reimbursed therefor from the [fund] . . . ." Id., § 2 (b). At the committee hearings, Robert Kehmna, president of the Insurance Association of Connecticut, testified as to concerns that the bill as drafted

would impose a liability on insurance carriers for which they had not contracted. Conn. Joint Standing Committee Hearings, Labor and Public Employees, Pt. 1, 1997 Sess., pp. 58–65. Kehmna explained that the insurance carriers had negotiated and collected premiums based on their statutory obligations as of the year of injury, and that they could not renegotiate contracts for pre-1997 injuries to account for COLAs payable perhaps ten or twenty years into the future, which were not mandated during the 1993–1997 period.[10] Id., pp. 61–62. In response to Kehmna's testimony, several committee members indicated that they would take the insurance carriers' concerns into account.[11] See id., pp. 62, 65,

[10] Kehmna stated, when addressing the change from the insurance carriers' pre-1997 legal obligations, in which they had no liability for 1993–1997 COLAs: "We cannot collect a premium for a COLA that does not exist, but the basis of how we calculate premiums and how the Insurance Department approves what we charge, this is a prior approval line of business. We cannot reach back and correct a mistake that we made. If we make a bad guess as to what our exposure is in 1997, in 1998 we can't reach back and say, 'hey, we want to make up for our mess up there.' No. Sorry. It's done. You collect the premiums in 1997 for the accidents that occur in that year regardless of when they are actually paid out.

"So for example, if you have a benefit that's paid out over a ten year period or a twenty year period, for an accident that occurred in 1997, you collected [a] premium in that year to cover those costs. I cannot, my members cannot, if you pass a COLA bill that applies to '93 to '97, cannot go back in 1998 and say, 'I need to collect more dollars for the '93 to '97–98 period.' That's not how the rating mechanism works.

"I would refer you to, I believe, [General Statutes §§] 31-306 and 31-307a which show in 1977 and 1969, when this type of similar benefit was created, there was a way, the state came up with a way to reimburse the insurer or employer for that new COLA because they had reached back and created something retroactively." Conn. Joint Standing Committee Hearings, supra, pp. 61–62.

[11] During the committee hearings, the following exchange occurred between Kehmna, Representative Christopher G. Donovan and Senator Edith G. Prague:

"[Kehmna]: I would encourage you to look at lists, or examples which are replete through the Workers' Compensation Act. The Legislature in its wisdom as a matter of social policy has created a benefit and given it retroactive application. The Legislature did not ask the insurance community or the employer community to pay for something that was not [in existence] when they reached back. It's a simple matter of fairness.

remarks of Senator Edith G. Prague and Representative Christopher G. Donovan.

The bill, as subsequently amended and introduced to the legislature, required employers to pay employees a retroactive "lump-sum payment" upon qualification for COLAs and required the fund to reimburse employers or insurers for "adjustments, including lump-sum payments . . . ." See Substitute Senate Bill No. 976, 1997 Sess., § 4. The analysis of the amended bill by the office of legislative research explained in relevant part that Senate Amendment "A", which became part of the bill "requires lump sum payments for retroactive COLAs for . . . totally and permanently disabled workers injured between July 1, 1993 and September 30, 1997; [and] . . . requires the [fund] to reimburse employers and insurers for the retroactive adjustments *as well as for future COLAs for eligible claimants injured between those dates* . . . ." (Emphasis added.) Office of Legislative Research Amended Bill Analysis, p. 199; see also id., p. 198.

In debates on the amended bill in the House of Representatives, legislators stated that the fiscal impact of the bill primarily would affect the fund, not the insurance carriers. See 40 H.R. Proc., Pt. 14, 1997 Sess., p. 5180, remarks of Representative Donovan; id., pp. 5196–97, remarks of Representative James A. O' Rourke III.[12] Representative Dominic Mazzoccoli asked for clarifica-

---

"[Representative Donovan]: I'm sure we can work out a plan to deal with that.

"[Senator Prague]: Fairness. It's a good word. That's a very good word." Conn. Joint Standing Committee Hearings, supra, p. 65.

[12] In regard to the fiscal impact, Representative Donovan stated: "Yes Mr. Speaker there is a fiscal impact. The main impact is to the . . . fund." 40 H.R. Proc., supra, p. 5180. He further noted a potential impact on municipalities. Id., pp. 5181–82. Representative O'Rourke stated: "For those of you who are worried, the impact is extremely low on workers' comp[ensation] benefits—workers' comp[ensation] insurance rates—excuse me." Id., p. 5196.

tion on the bill, stating that he was under the impression that the legislature was "in the process of phasing out the . . . fund." Id., p. 5187. Representative Donovan explained: "I guess by law we are phasing it out by not taking new cases. There are still a number of individuals who are on the . . . fund and we continue the liability of those individuals." Id., pp. 5187–88.

Representative O'Rourke subsequently addressed the concern about the fiscal impact on the fund, stating: "[A]s far as the impact which has been raised on the . . . fund, it is extremely important that we take this step today. Because every year that we wait to restor[e] cost of living adjustments, that means more and more workers will ultimately have their COLAs paid by the . . . fund. And two years ago we took the step in this chamber to close [the] fund to future liabilities." Id., p. 5197. We conclude that the legislative history, in its entirety, supports the interpretation suggested by the text of the statute that the fund is liable for all past and future COLAs accrued for compensable injuries sustained on or after July 1, 1993, and before October 1, 1997.

The fund, however, points to Representative O'Rourke's comments as support for its contention that the legislature intended to limit its liability to those COLAs accrued for the 1993–1997 time period.[13] In our view, however, these comments equally support our conclusion. In particular, we note that Representative O'Rourke defined the fund's liability in terms of the *workers* it would be required to cover when he stated, "more and more workers will ultimately have their

---

[13] The fund also cites the following comments made by Representative O'Rourke: "So were we not to pass this bill today, then we would leave that liability and future cost to the . . . fund to become larger and larger. So, really this is going to [be] beneficial today to the . . . fund and to workers' comp[ensation] premiums in the state of Connecticut." 40 H.R. Proc., supra, p. 5197.

COLAs paid by the . . . fund"; id.; and not in terms of the *years* it would be required to cover. His comments reasonably indicate that, for every year the legislature waited to enact the COLAs, the fund would incur liability for more workers to the full extent of the COLAs payable to those workers. Moreover, although we agree with the fund that we must be cognizant of the legislature's intention to reduce the fund's liability in the 1991–1995 workers' compensation reforms, many of these reforms were directed at similarly reducing costs for the employer and insurance carrier. See, e.g., *Schiano* v. *Bliss Exterminating Co.*, supra, 260 Conn. 40 (Reforms made in 1993 were "an effort to reduce the cost of the workers' compensation system after businesses complained that excessive costs were driving businesses out of the state and to ensure that the system worked as effectively as possible. See 36 H.R. Proc., [Pt. 18, 1993 Sess.], pp. 6142–46, remarks of Representative [Michael P.] Lawlor."). Therefore, Representative O'Rourke's comments do not undermine our interpretation.

Finally, the fund directs our attention to the Frankl memorandum. It claims that then chairman Frankl interpreted § 31-307a (c) therein as imposing liability on employers and insurers for COLAs accruing after October 1, 1997, and that we should give effect to that interpretation.[14] Specifically, the fund notes that Frankl

[14] The Frankl memorandum, dated September 10, 1997, was entitled "Cost-of-Living Adjustments" and was addressed to, inter alia, all workers' compensation commissioners and insurance carriers. The memorandum provides in relevant part: "[I]n all cases where the compensable injury occurred between July 1, 1993 and October 1, 1997, the injured employee or dependent will be entitled to receive a retroactive COLA payment to make up for the COLAs that were not paid. This lump-sum payment will be equivalent to the COLAs that the employee or dependent would have received if they had been entitled to COLAs all along from the date of the compensable injury. Employers and insurers are initially responsible for the retroactive COLA payment, which must be made by December 1, 1997, or within thirty days of the date it becomes due. Such employers and/or insurers will subsequently be reimbursed by the Second Injury Fund. *However, the regular COLA*

was "closely involved with all [the] debate over new workers' compensation laws in the development stage." Therefore, the fund contends that Frankl "was sharing what he knew to be true about the new law based upon personal knowledge gathered in the legislative process."

We previously have not determined whether a commissioner's policy directive, which contains an interpretation not adopted pursuant to formal rule-making or adjudicatory procedures, is entitled to deference. Cf. *Christensen* v. *Harris County*, 529 U.S. 576, 586, 120 S. Ct. 1655, 146 L. Ed. 2d 621 (2000) (federal Department of Labor's interpretation contained in opinion letter rejected because it is "not one arrived at after, for example, a formal adjudication or notice-and-comment rulemaking. Interpretations such as those in opinion letters—like interpretations contained in policy statements, agency manuals, and enforcement guidelines, all of which lack the force of law—do not warrant . . . deference" as prescribed under *Chevron U.S.A., Inc.* v. *Natural Resources Defense Council, Inc.*, 467 U.S. 837, 104 S. Ct. 2778, 81 L. Ed. 2d 694 [1984].). Nonetheless, in light of our failure to accord such deference to an agency's interpretation of a statute that has been neither time-tested nor subject to judicial review; *Southern New England Telephone Co.* v. *Dept. of Public Utility Control*, 261 Conn. 1, 13, 803 A.2d 879 (2002); *Schiano* v. *Bliss Exterminating Co.*, supra, 260 Conn. 34; we cannot conceive of a rationale for according substantial deference to the Frankl memorandum under these circumstances. Moreover, in light of the persuasive evidence gleaned from the text of the statute and the legislative history that the legislature intended a contrary interpretation, we reject the interpretation set forth in the Frankl memorandum. We conclude, there-

*payments from October 1, 1997 onward are the sole responsibility of the employer or insurer.*" (Emphasis added.)

fore, that the board properly concluded that § 31-307a (c) imposes on the fund reimbursement obligations for all COLAs payable to qualified employees sustaining compensable injuries on or after July 1, 1993, and before October 1, 1997.

The decision of the board is affirmed.

In this opinion the other justices concurred.