# CATHERINE CRANDLE ET AL. *v.* CONNECTICUT STATE EMPLOYEES RETIREMENT COMMISSION
## (SC 20532)

Robinson, C. J., and McDonald, D'Auria, Mullins, Kahn, Ecker and Keller, Js.

*Syllabus*

The plaintiffs, C and R, former state employees who are members of Tier II and Tier IIA, respectively, of the State Employees Retirement System (SERS), appealed to the trial court from the ruling of the defendant, the State Employees Retirement Commission. C's last day of paid state employment was in October, 2012, and R's last day of paid state employment was in October, 2015. Thereafter, C and R each submitted an application for disability retirement benefits to the Retirement Services Division, which received R's application in March, 2016, and C's application in April, 2016. The Medical Examining Board for Disability Retirement granted the plaintiffs' applications, and payment of their benefits commenced on the first day of the month following the Retirement Services Division's receipt of their respective applications. Accordingly, R's benefits became payable on April 1, 2016, and C's benefits became payable on May 1, 2016. The plaintiffs subsequently filed with the commission a petition for a declaratory ruling, claiming that, under the State Employees Retirement Act (§ 5-152 et seq.), payment of disability retirement benefits commences on the day after an employee's last day of paid state employment. The commission rejected the plaintiffs' claim, concluding instead that disability retirement benefits are payable on the first day of the month after the Retirement Services Division receives the employee's application. The commission noted that, although the act is silent as to when disability retirement benefits become payable, the attorney general had issued an opinion in 1981, in which he concluded that, under Tier I of SERS, such benefits are not payable from the date of the employee's termination of employment. Moreover, the commission observed that it had implemented that interpretation of the act on a number of occasions since 1981 and that the legislature had not overruled that interpretation. In the plaintiffs' administrative appeal before the

Crandle *v.* Connecticut State Employees Retirement Commission

trial court, that court upheld the commission's ruling on the ground that the commission's interpretation of the act was entitled to substantial deference because it was time-tested and reasonable. The trial court rendered judgment dismissing the plaintiffs' administrative appeal, from which the plaintiffs appealed. *Held*:

1. The plaintiffs could not prevail on their claims that the trial court improperly deferred to the commission's interpretation of the act on the basis that that interpretation was neither time-tested, insofar as it was not formally articulated or adopted pursuant to formal rule-making or adjudicatory procedures, nor reasonable, insofar as the provisions of the act clearly and unambiguously provide that disability retirement benefits become payable on the day after the employee's last day of paid employment:

   a. The commission's interpretation of the act was time-tested: even if an agency's interpretation of a statute is entitled to no deference unless it had been adopted pursuant to formal rule-making or adjudicatory procedures, the commission attached to its ruling an exhibit showing that, since 1986, it has issued decisions in a number of cases applying the rule that disability retirement benefits commence on the first day of the month after the application is received, this court repeatedly has afforded deference to an agency's interpretation of a statute, as reflected in the agency's rulings in specific cases, and the plaintiffs did not explain why these cases were not issued pursuant to adjudicatory procedures; moreover, unlike agency interpretations that are set forth only in private correspondence and internal documents, which are not entitled to judicial deference, the commission's interpretation of the act in the present case had been formally articulated pursuant to adjudicatory procedures, namely, in the specific cases it cited in its exhibit; in addition, the attorney general's 1981 opinion had been distributed to the heads of all state agencies shortly after it was issued, presumably so that agencies could make the substance of the opinion known to any SERS member who inquired about the date on which disability retirement benefits become payable.

   b. There was no merit to the plaintiffs' claim that the commission's interpretation of the act, which was based on the attorney general's 1981 opinion, was unreasonable because it conflicted with the legislature's 1983 amendments to the act adopting tier II of SERS: the provisions (§§ 5-169 (j) and 5-192*l* (c)) of the act on which the plaintiffs relied did not specify the date that payment of retirement disability benefits commences but, rather, distinguished between the member's date of disability and date of retirement, nothing in the act indicated that the date a member becomes eligible for retirement disability benefits and the date that benefits become payable are identical, and, accordingly, the 1983 amendments did not clearly indicate that the attorney general's interpretation of the act was incorrect; moreover, although the act is silent regarding when disability retirement benefits commence and its

342 Conn. 67      FEBRUARY, 2022      69

Crandle *v.* Connecticut State Employees Retirement Commission

express provisions do no compel the interpretation that the commission adopted, that interpretation was nonetheless reasonable, especially in view of the fact that the provisions of the act were negotiated by the state and representatives of the state employee unions pursuant to collective bargaining, and approved and codified by the legislature, and neither those parties nor the legislature, which were all presumed to have been aware of the attorney general's 1981 opinion and the commission's decisions applying its interpretation of the act, has sought to renegotiate the agreement or to amend the provisions of the act to reflect a different understanding, even though the legislature has amended the act several times since 1981; furthermore, because the express terms of the act provide that, for normal retirement, early retirement and hazardous duty retirement, retirement occurs after the date that an application is filed, and payment of retirement benefits commences on the day of retirement, it was reasonable for the commission to treat disability retirement consistently with these other forms of retirement; in addition, having disability retirement benefits become payable on the first day of the month after an application for such benefits is received allows the state to predict at any given time its potential liability for the payment of such benefits, changing the rule could subject the state to claims for retroactive payments from members who are already retired, and it was appropriate for this court to defer to the commission's reasonable interpretation of the act in light of the gap that the legislature left in the act by failing to specify the date on which an employee's disability retirement benefits begin.

2. There was no merit to the plaintiffs' claim that the commission, as a fiduciary of the plaintiffs, had the burden of proving, by clear and convincing evidence, fair dealing with respect to its use of an unwritten practice to set a start date for disability benefits: when a breach of fiduciary duty is alleged, the burden of proof shifts to the fiduciary to prove fair dealing by clear and convincing evidence only when the dominant party is the beneficiary of the transaction or obtains a possible benefit, and, in the present case, the plaintiffs did not allege that the commission took advantage of its fiduciary relationship with SERS members to benefit itself; moreover, even if it were unfair for the commission to apply its unwritten interpretation of the act, the plaintiffs failed to raise a colorable claim because it would be anomalous to conclude that the commission must apply the plaintiffs' preferred interpretation, which also is not expressly set forth in the act or related regulations.

Argued January 12, 2021—officially released February 1, 2022*

*Procedural History*

Administrative appeal from the decision of the defendant determining the commencement date of the plain-

* February 1, 2022, the date that this decision was released as a slip opinion, is the operative date for all substantive and procedural purposes.

Crandle *v.* Connecticut State Employees Retirement Commission

tiffs' disability retirement benefits, brought to the Superior Court in the judicial district of New Britain, where the court, *Huddleston, J.*, granted in part the defendant's motion to dismiss; thereafter, the court, *Cordani, J.*, rendered judgment dismissing the appeal, from which the named plaintiff et al. appealed. *Affirmed.*

*Russell D. Zimberlin*, for the appellants (named plaintiff et al.).

*Cindy M. Cieslak*, with whom, on the brief, was *Michael J. Rose*, for the appellee (defendant).

*Opinion*

ROBINSON, C. J. The principal issue in this appeal is whether the State Employees Retirement Act (act), General Statutes § 5-152 et seq., requires the state to commence payment of state employee disability retirement benefits on the day after the employee's last day of paid employment or, instead, the act permits the payment of such benefits to start on the first day of the month after receipt of the employee disability retirement application. The plaintiffs, Catherine Crandle and Ronald Robinson,[1] who are former state employees, appeal[2] from the judgment of the trial court dismissing

[1] In addition to Crandle and Robinson, the plaintiffs in the underlying administrative appeal were Stephanie Hawthorne, Pedro Rodriguez, Michael Gardner, Leslie Cavanagh, Leah Margentino, Tammy Fettig, Ebone Kearse, Dana Goldberg, Gerard Bernier, Darcie Dockum, Stanley Jarosz, Derek Williams, Linda Walsh, Maria Sous and Karla Carey. The trial court, *Huddleston, J.*, dismissed the claims of Margentino, Fettig, Kearse, Goldberg, Bernier, Dockum, Jarosz, Williams, Walsh, Sous and Carey for their failure to exhaust their administrative remedies. The trial court, *Cordani, J.*, dismissed the claims of Hawthorne, Cavanagh, Gardner and Rodriguez for lack of aggrievement.

Because only Crandle and Robinson are participating in this appeal, all references herein to the plaintiffs are to them collectively, and we refer to them individually by name when appropriate. Moreover, all references in this opinion to the trial court are to Judge Cordani.

[2] The plaintiffs appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

Crandle *v.* Connecticut State Employees Retirement Commission

their administrative appeal from the declaratory ruling
of the defendant, the Connecticut State Employees
Retirement Commission (commission). On appeal, the
plaintiffs claim that the trial court improperly upheld
the commission's declaratory ruling that, under various
provisions of the act, disability retirement benefit pay-
ments commence on the first day of the month following
receipt by the Retirement Services Division (division) of
the employee's approved application for such benefits.
The plaintiffs contend that the trial court improperly
(1) deferred to the commission's interpretation of the
act because that interpretation is neither reasonable
nor time-tested, and (2) failed to consider that the com-
mission, as a fiduciary of members of the State Employ-
ees Retirement System (SERS), had the burden of
proving fair dealing by clear and convincing evidence.
We disagree with these claims. Accordingly, we affirm
the judgment of the trial court.

The record reveals the following facts, which the
commission found or which are undisputed, and proce-
dural history. Crandle is a member of Tier II of SERS.[3]
On April 13, 2016, the division received Crandle's appli-
cation for disability retirement benefits. Because Cran-
dle's last date of state employment was October 16,
2012, the application was untimely under § 5-155a-2 (d)
of the Regulations of Connecticut State Agencies, which
requires such applications to be filed within twenty-four
months of the applicant's last day of paid employment.
Crandle requested that the commission toll the limita-
tion period for submitting the application, and the com-

[3] Tier II of SERS is governed by part V of the act, General Statutes § 5-
192e et seq., which applies to all members who joined SERS after July 1,
1984, and to some members who joined SERS after January 1, 1984. See
General Statutes § 5-192e (a). Tier II does not apply to members who joined
SERS after June 30, 1997. See Office of the State Comptroller, Retirement
Services Division, Tier II/ IIA–Retirement Basics, available at https://www.
osc.ct.gov/empret/tier2summ/workshop/tierprint22a.htm (last visited Janu-
ary 31, 2022).

Crandle *v.* Connecticut State Employees Retirement Commission

mission granted her request. Thereafter, the State of Connecticut Medical Examining Board for Disability Retirement (board) conducted a hearing on Crandle's application for disability retirement benefits and granted it. Payment of the benefits commenced on May 1, 2016, the first day of the month following the division's receipt of the application.

Robinson is a member of Tier IIA of SERS.[4] His last date of state employment was October 31, 2015. On March 30, 2016, Robinson applied for disability retirement benefits. The board approved his application, and payment of the benefits commenced on April 1, 2016, the first day of the month following the division's receipt of his application.

On March 1, 2018, the plaintiffs filed a petition for a declaratory ruling with the commission, contending that, under the act, payment of disability retirement benefits commences the day after the employee's last day of paid employment.[5] In its decision and declaratory ruling, the commission noted that the act is silent with respect to when disability retirement benefits become payable. The commission disagreed with the plaintiffs' reliance on § 5-155a-2 (d) of the regulations of Connecticut State Agencies to support their position. The commission concluded that the language of the regulation, providing that "[t]he time period for filing an application for disability retirement benefits . . . shall begin on the day after the applicant's last day of paid employment,'' simply provides a time frame in which the appli-

[4] Tier IIA of SERS applies to members who joined SERS from July 1, 1997, through June 30, 2011. See Office of the State Comptroller, Retirement Services Division, Tier II/IIA Retirement Basics, available at https://www.osc.ct.gov/empret/tier2summ/workshop/tierprint22a.htm (last visited January 31, 2022).

[5] The petition was brought by the plaintiffs, Jeremy Wiganowske, Stephanie Hawthorne, Paula Mitchell, Leslie Cavanagh, Pedro Rodriguez and Michael Gardner. Only the plaintiffs remain as parties to this case. See footnote 1 of this opinion.

Crandle *v.* Connecticut State Employees Retirement Commission

cant must apply and does not prescribe the day that payment begins. The commission also observed that normal retirement benefits for Tier II members become payable on the first day of any future month named in the application.[6] See, e.g., General Statutes § 5-192*l* (a) ("[e]ach member of tier II who has attained age sixty-five and has completed ten or more years of vesting service may retire on his own application on the first day of any future month named in the application").

In addition, the commission pointed out that, in 1981, it had sought an opinion from the attorney general on the issue of whether disability retirement benefits are payable retroactive to the date of the employee's termination of employment under Tier I of SERS.[7] In that opinion, the attorney general concluded that the legislature intended that Tier I "retirement benefits are to flow prospectively from the time of making application." Opinions, Conn. Atty. Gen. No. 1981-50 (July 30, 1981) p. 1 (1981 attorney general opinion). This is because "[a]xiomatic to the granting of such benefits is the requirement that a member of [SERS] apply for retirement, be it regular, disability or service-connected disability." Id., pp. 1–2. Emphasizing that it "is the filing of the application for retirement, and its subsequent approval by the [c]ommission [that] triggers a member's entitlement to benefits"; id., p. 2; the 1981 attorney general opinion concluded that "service-connected disability retirement benefits are not to be given retroactive effect when the application [therefor] is submitted subsequent to the date of termination." Id., p. 3.

---

[6] None of the parties contends that, for purposes of the issue before us in this appeal, Tier IIA disability retirement benefits differ in any material way from Tier II benefits.

[7] General Statutes §§ 5-157 through 5-192d govern Tier I of SERS. See General Statutes § 5-192f (e). Tier I applies to most employees who joined SERS on or before July 1, 1984. See Connecticut State Employees Retirement System, Tier I: Summary Plan Description, available at https://www.osc.ct.gov/empret/tier1summ/tier1summ.htm (last visited January 31, 2022)

Crandle *v.* Connecticut State Employees Retirement Commission

The commission further reasoned in its declaratory ruling that "the [plaintiffs'] request to use the day after their last day of paid employment as the date on which benefits become payable is less of a bright-line rule [than the practice of commencing payment of benefits on the first day of the month after the application is received] since, often, in cases of disability retirement, members . . . take some form of a leave of absence while they evaluate whether they will recover from their injury or in fact are permanently disabled from the job so as to qualify for a disability retirement. Sometimes such leave is paid, and sometimes it is unpaid, depending on the types of leave accrued pursuant to sick time, vacation, family and medical leave, and workers' compensation laws and policies." Moreover, the commission noted that "some of the petitioners"; see footnote 5 of this opinion; "claimed service credit for certain types of leave, and the statutes do not permit an employee to receive service credit and a retirement benefit for the same period of employment."

Finally, the commission observed that it had implemented the foregoing interpretation of the act in a number of cases since 1981 and that the legislature had not overruled that interpretation, despite making multiple changes to SERS.[8] The commission further pointed out that the act is a creature of collective bargaining and was approved and codified by the legislature pursuant to General Statutes (Rev. to 2017) § 5-278 (b),[9] and that

---

[8] The commission attached to its ruling an exhibit that is identified in the index to the return of record that was filed in the trial court as a "selection of the commission's past decisions relating to the effective date of payment of disability retirement benefits." Three of the decisions appear to involve applications for disability retirement benefits.

[9] General Statutes (Rev. to 2017) § 5-278 (b) provides in relevant part: "Any agreement reached by the negotiators shall be reduced to writing. The agreement, together with a request for funds necessary to fully implement such agreement and for approval of any provisions of the agreement which are in conflict with any statute or any regulation of any state agency . . . shall be filed by the bargaining representative of the employer with the clerks of the House of Representatives and the Senate within ten days after

Crandle *v.* Connecticut State Employees Retirement Commission

the parties charged with negotiating the terms of SERS had not made any attempt to amend the act in light of the commission's interpretation. Accordingly, the commission concluded in its declaratory ruling that disability retirement benefits are payable on the first day of the month following the division's receipt of an approved application for benefits.

Thereafter, the plaintiffs[10] filed an administrative appeal from the commission's declaratory ruling with the trial court. The trial court concluded that the commission's ruling was time-tested and reasonable and, therefore, was entitled to substantial deference. In addition, the trial court observed that neither the legislature nor the parties that had negotiated the terms of SERS had taken steps to change those terms as a result of the commission's interpretation. Moreover, the court reasoned that the commission's interpretation provides an incentive for members to apply promptly for disability retirement benefits, thereby minimizing the need for retroactive payments and maximizing the predictability of the state's financial liability. The court rejected the plaintiffs' reliance on General Statutes § 5-169 (j),[11] which provides in relevant part that "[a] member's date of disability shall be his last date of active employment by the state prior to such disability or the date as of which his benefits under this section are payable," concluding that that provision merely defines the member's

the date on which such agreement is reached . . . . The General Assembly may approve any such agreement as a whole by a majority vote of each house or may reject such agreement as a whole by a majority vote of either house. . . .''

[10] See footnote 1 of this opinion.

[11] General Statutes § 5-169 (j) provides: "A member whose date of disability occurs prior to January 1, 1984, shall have his benefits calculated in accordance with the provisions of law in effect at the time of such occurrence. A member's date of disability shall be his last date of active employment by the state prior to such disability or the date as of which his benefits under this section are payable, whichever is earlier. A leave of absence for medical reasons shall not be deemed to be active employment."

date of disability for purposes of calculating benefits and does not specify the date that benefits first become payable. The court also rejected the plaintiffs' contention that the act should be liberally construed because it is remedial in nature, concluding that it merely sets forth contractual obligations negotiated by the unions and the state. Accordingly, the trial court rendered judgment dismissing the administrative appeal. This appeal followed.

On appeal, the plaintiffs claim that the trial court incorrectly concluded that the commission's interpretation of the act was entitled to deference because that interpretation is neither time-tested nor reasonable. They further claim that, as a fiduciary of SERS and its members, the commission had the burden of proving fair dealing with the plaintiffs by clear and convincing evidence. We address each claim in turn.

I

We begin our analysis with the plaintiffs' claims that the trial court improperly deferred to the commission's interpretation of the act because that interpretation was neither time-tested nor reasonable in that the applicable statutes clearly and unambiguously provide that benefits become payable on the day after the employee's last day of paid employment. We disagree.

Before turning to the plaintiffs' specific claims, we note the following general principles that govern judicial review of an agency's interpretation of the statutory scheme that it administers. "This court reviews the trial court's judgment pursuant to the Uniform Administrative Procedure Act (UAPA), General Statutes § 4-166 et seq. Under the UAPA, it is [not] the function . . . of this court to retry the case or to substitute its judgment for that of the administrative agency. . . . Even for conclusions of law, [t]he court's ultimate duty is only to decide whether, in light of the evidence, the [agency]

Crandle *v.* Connecticut State Employees Retirement Commission

has acted unreasonably, arbitrarily, illegally, or in abuse
if its discretion. . . . [Thus] [c]onclusions of law
reached by the administrative agency must stand if the
court determines that they resulted from a correct appli-
cation of the law to the facts found and could reasonably
and logically follow from such facts.'' (Internal quota-
tion marks omitted.) *Commissioner of Public Safety*
v. *Freedom of Information Commission*, 312 Conn.
513, 525–26, 93 A.3d 1142 (2014).

This court previously has recognized that ''the tradi-
tional deference accorded to an agency's interpretation
of a statutory term is unwarranted when the construc-
tion of a statute . . . has not previously been subjected
to judicial scrutiny [or to] . . . a governmental agency's
time-tested interpretation . . . . Conversely, an
agency's interpretation of a statute is accorded defer-
ence when the agency's interpretation has been for-
mally articulated and applied for an extended period
of time, and that interpretation is reasonable. . . . Def-
erence is warranted in such circumstances because a
time-tested interpretation, like judicial review, provides
an opportunity for aggrieved parties to contest that
interpretation. Moreover, in certain circumstances, the
legislature's failure to make changes to a long-standing
agency interpretation implies its acquiescence to the
agency's construction of the statute. . . . For these
reasons, this court long has adhered to the principle
that when a governmental agency's time-tested interpre-
tation [of a statute] is reasonable it should be accorded
great weight by the courts.''[12] (Citations omitted; inter-

[12] The plaintiffs point out that, in *Bouchard* v. *State Employees Retirement
Commission*, 328 Conn. 345, 178 A.3d 1023 (2018), this court stated, with
respect to a number of issues involving the interpretation of the act, that,
''[a]lthough substantial deference is given to factual and discretionary deter-
minations of administrative agencies, each of these questions is a purely
legal matter over which we exercise plenary review.'' Id., 358. There was
no claim in *Bouchard*, however, that the commission's interpretation was
entitled to deference because it was time-tested and reasonable. Accordingly,
we cannot conclude that that case overruled the long-standing principle
that deference is given to a time-tested and reasonable agency interpretation.

Crandle *v.* Connecticut State Employees Retirement Commission

nal quotation marks omitted.) *Tuxis Ohr's Fuel, Inc.*
v. *Administrator, Unemployment Compensation Act*,
309 Conn. 412, 422–23, 72 A.3d 13 (2013).

This court also has recognized that, in cases involving
the interpretation of federal statutes, "[i]f the agency's
reading fills a gap [in the statute] . . . we give that
reading controlling weight, even if it is not the answer
the court would have reached if the question initially
had arisen in a judicial proceeding." (Internal quotation
marks omitted.) *Ahern* v. *Thomas*, 248 Conn. 708, 718,
733 A.2d 756 (1999). Other courts have applied the same
principle to the interpretation of state statutes. For
example, in *Hama Hama Co.* v. *Shorelines Hearings
Board*, 85 Wn. 2d 441, 536 P.2d 157 (1975), the Washington Supreme Court reasoned that, "when a statute is
ambiguous . . . there is the well known rule of statutory interpretation that the construction placed [on] a
statute by an administrative agency charged with its
administration and enforcement, while not absolutely
controlling [on] the courts, should be given great weight
in determining legislative intent. . . . The primary
foundation and rationale for this rule is that considerable judicial deference should be accorded to the special expertise of administrative agencies. Such expertise
is often a valuable aid in interpreting and applying an
ambiguous statute in harmony with the policies and
goals the legislature sought to achieve by its enactment.

"At times, administrative interpretation of a statute
may approach lawmaking, but we have heretofore recognized that *it is an appropriate function for administrative agencies to fill in the gaps where necessary to
the effectuation of a general statutory scheme. . . . It
is likewise valid for an administrative agency to fill*

See, e.g., *Meriden* v. *Freedom of Information Commission*, 338 Conn. 310,
319, 258 A.3d 1 (2021) (court gives deference to agency's interpretation of
statute if it is time-tested and reasonable).

Crandle *v.* Connecticut State Employees Retirement Commission

*in the gaps via statutory construction*—as long as the agency does not purport to amend the statute." (Citations omitted; emphasis added; internal quotation marks omitted.) Id., 448.

Similarly, in *Silver Lining Group EIC Morrow County.* v. *Ohio Dept. of Education Autism Scholarship Program*, 85 N.E.3d 789 (Ohio App. 2017), appeal denied, 152 Ohio St. 3d 1424, 93 N.E.3d 1005 (2018), the Ohio Court of Appeals held that, "[i]f a statute provides an administrative agency authority to perform a specified act but does not provide the details by which the act should be performed, the agency is to perform the act in a reasonable manner based [on] a reasonable construction of the statutory scheme. . . . An agency's reading that fills a gap or defines a term in a reasonable way in light of the [l]egislature's design controls, even if it is not the answer the court would have reached in the first instance. . . .

"Thus, a legislative gap is not equivalent to a lack of authority for the agency to act. . . . Rather, the power of an administrative agency to administer a . . . program *necessarily requires the formulation of policy and the making of rules to fill any gap left, implicitly or explicitly*, by the legislature." (Citations omitted; emphasis in original; internal quotation marks omitted.) Id., 801; see also *Division of Justice & Community Services* v. *Fairmont State University*, 242 W. Va. 489, 496, 836 S.E.2d 456 (2019) ("a court is obligated to defer to an agency's view only when there is a statutory gap or ambiguity" (internal quotation marks omitted)).

A

We begin with the plaintiffs' claim that the commission's interpretation of the act is not time-tested because it "was neither formally articulated nor adopted pursuant to formal rule-making or adjudicatory procedures and because the agency . . . relied [only] on private corre-

Crandle *v.* Connecticut State Employees Retirement Commission

spondence and internal documents . . . ."[13] In support
of this claim, the plaintiffs rely on two of this court's
decisions. See *Tilcon Connecticut, Inc.* v. *Commissioner of Environmental Protection*, 317 Conn. 628,
651, 119 A.3d 1158 (2015) (agency's interpretation of
statute is not time-tested if it has "been neither formally
articulated nor adopted pursuant to formal rule-making
or adjudicatory procedures"); *Hasselt* v. *Lufthansa
German Airlines*, 262 Conn. 416, 432, 815 A.2d 94 (2003)
(noting that, under United States Supreme Court's decision in *Christensen* v. *Harris County*, 529 U.S. 576,
587, 120 S. Ct. 1655, 146 L. Ed. 2d 621 (2000), "opinion
letters—like interpretations contained in policy statements, agency manuals, and enforcement guidelines,
all of which lack the force of law—do not warrant . . .
deference" (internal quotation marks omitted)); see
also *Christensen* v. *Harris County*, supra, 587 (United
States Department of Labor's interpretation contained
in opinion letter was not entitled to deference because
it was "not one arrived at after, for example, a formal
adjudication or [notice and comment rule making],"
and "[i]nterpretations such as those in opinion letters—
like interpretations contained in policy statements,
agency manuals, and enforcement guidelines, all of
which lack the force of law—do not warrant . . . deference" under *Chevron U.S.A. Inc.* v. *Natural
Resources Defense Council, Inc.*, 467 U.S. 837, 104 S.
Ct. 2778, 81 L. Ed. 2d 694 (1984)).[14]

---

[13] The plaintiffs also contend that the commission's interpretation is not
time-tested because the 1981 attorney general opinion, on which the commission heavily relies, conflicts with later amendments to the act that, according
to the plaintiffs, clearly show that the payment of disability retirement
benefits commences on the day after the member's last day of paid employment. Because that claim goes more properly to the plaintiffs' claim that
the commission's interpretation is unreasonable, we address it in part I B
of this opinion.

[14] Under *Chevron*, "[s]tatutory ambiguities will be resolved . . . not by
the courts but by the administering agency." *Arlington* v. *Federal Communications Commission*, 569 U.S. 290, 296, 133 S. Ct. 1863, 185 L. Ed. 2d 941
(2013); see id. ("if the statute is silent or ambiguous with respect to the

Crandle *v.* Connecticut State Employees Retirement Commission

We conclude that neither *Hasselt* nor *Tilcon Connecticut, Inc.*, supports the plaintiffs' position. In *Hasselt*, the defendant, the Second Injury Fund, contended that this court should give deference to a memorandum written by Jesse M. Frankl, the chairman of the Workers' Compensation Commission, in which Frankl gave his interpretation of General Statutes § 31-307a (c). See *Hasselt* v. *Lufthansa German Airlines*, supra, 262 Conn. 421. This court noted that it "previously [had] not determined whether a commissioner's policy directive, which contains an interpretation [of a state statute] not adopted pursuant to formal rule-making or adjudicatory procedures, is entitled to deference," or, instead, this court should adopt the *Christenson* rule applicable to policy directives interpreting federal statutes. Id., 432. This court did not resolve that issue, however, because it concluded that, even if such policy directives may be entitled to deference in appropriate circumstances, Frankl's memorandum was not because it was neither time-tested nor reasonable.[15] Id.

specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute" (internal quotation marks omitted)).

[15] We recognize that, in *Sarrazin* v. *Coastal, Inc.*, 311 Conn. 581, 89 A.3d 841 (2014), this court cited *Hasselt* for the proposition that an agency's interpretation of a statute is not entitled to deference when it "was not promulgated pursuant to any formal rule-making procedures or articulated pursuant to any adjudicatory procedures . . . ." Id., 611; see *Frank* v. *Dept. of Children & Families*, 312 Conn. 393, 421, 94 A.3d 588 (2014) (citing *Sarrazin* for proposition that "an agency interpretation, whether of its own regulations or of a statute that the agency is charged with enforcing, is not accorded deference by the court when it has not been promulgated pursuant to any formal rule-making procedures or articulated pursuant to any adjudicatory procedures" (internal quotation marks omitted)); *State* v. *Drupals*, 306 Conn. 149, 169, 49 A.3d 962 (2012) (citing *Hasselt* for proposition that "[a]n agency form, to the extent it contains an interpretation not adopted pursuant to formal rule-making or adjudicatory procedures," is not entitled to deference (internal quotation marks omitted)). As we have explained, however, this court did not hold in *Hasselt* that an agency's interpretation of the statute that was not adopted pursuant to formal rule-making or adjudicatory procedures is not entitled to deference, and in none of these cases did the court independently analyze the issue.

Crandle *v.* Connecticut State Employees Retirement Commission

We further note that, in *Christensen* v. *Harris County*, supra, 529 U.S. 576, on which this court relied in *Hasselt*, the United States Supreme Court recognized that, although interpretations contained in opinion letters "do not warrant *Chevron*-style deference," they are "entitled to respect under [its] decision in *Skidmore* v. *Swift & Co.*, 323 U.S. 134, 140 [65 S. Ct. 161, 89 L. Ed. 124] (1944) . . . to the extent that those interpretations have the power to persuade . . . ." (Internal quotation marks omitted.) *Christensen* v. *Harris County*, supra, 587; see *Skidmore* v. *Swift & Co.*, supra, 140 ("We consider that the rulings, interpretations and opinions of the [a]dministrator under [the Fair Labor Standards] Act, while not controlling [on] the courts by reason of their authority, do constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance. The weight of such a judgment in a particular case will depend [on] the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control."). This formulation seems consistent with our jurisprudence holding that, although an agency's interpretation of a statute is not binding, it is entitled to deference when it is time-tested and reasonable.[16] The same is true of an opinion of the attorney general. See *Connecticut Hospital Assn., Inc.* v. *Commission on Hospitals & Health Care*, 200 Conn. 133, 143, 509 A.2d 1050 (1986) ("[a]lthough an opinion of the attorney general is not binding on a court, it is entitled to careful consideration and is generally regarded as highly persuasive").

In any event, even if the plaintiffs were correct that an agency's interpretation of a state statute is entitled

---

[16] We acknowledge that it is arguable that the "respect" given to informal but persuasive policy directives interpreting federal statutes under *Christensen* may be somewhat weaker than the deference that we afford to time-tested and reasonable agency interpretations.

Crandle *v.* Connecticut State Employees Retirement Commission

to *no* deference if it was not adopted pursuant to formal rule-making or adjudicatory procedures, the commission attached to its ruling an exhibit showing that, on a number of occasions since 1986, the commission has issued decisions in specific cases applying the rule that disability retirement benefits commence on the first day of the month after the application is received.[17] See footnote 8 of this opinion. The plaintiffs have not explained why these specific cases were not issued pursuant to adjudicatory procedures. Cf. *United States* v. *Independent Bulk Transport, Inc.*, 480 F. Supp. 474, 478 (S.D.N.Y. 1979) (under federal administrative law, "[a]djudicatory proceedings, unlike [rule-making] proceedings, involve determinations of contested facts in applying rules to specific circumstances"). This court has repeatedly afforded deference to an agency's interpretation of a statute, as reflected in the agency's rulings in specific cases. See, e.g., *Tuxis Ohr's Fuel, Inc.* v. *Administrator, Unemployment Compensation Act*, supra, 309 Conn. 430–31 (giving deference to interpretation of statute by Board of Review of Employment Security Appeals Division, as reflected in that board's decisions); *Stec* v. *Raymark Industries, Inc.*, 299 Conn. 346, 357, 10 A.3d 1 (2010) ("[i]n light of the [Compensation Review] [B]oard's numerous decisions from 1980 to 2010, a period of thirty years, we conclude that the board's construction of [General Statutes] § 31-301 (a) constitutes a time-tested interpretation" entitled to deference); *Hartford* v. *Hartford Municipal Employees Assn.*, 259 Conn. 251, 268, 788 A.2d 60 (2002) (giving deference to agency's interpretation when agency "con-

---

[17] The commission also recognized exceptions to the rule that payment of retirement benefits commences on the first day of the month after receipt of the application when receipt of the application by the division was delayed through no fault of the applicant, when an agency, through its error, continued a member on sick leave when he should have been retired, and when the applicant failed to apply for retirement in a timely manner because the state misinformed her regarding her retirement rights.

Crandle *v.* Connecticut State Employees Retirement Commission

sistently [had] interpreted the statute for more than twenty-five years'' in its rulings); *Savings Bank of Rockville* v. *Wilcox*, 117 Conn. 188, 194, 167 A. 709 (1933) (''The interpretation [that] we have given this statute conforms to the practice of the tax commissioner's office and the bank in computing the deductions previously accorded as shown by the stipulation and exhibits. It is a familiar rule of statutory and constitutional construction that such usage, while not absolutely binding [on] the courts, is entitled to great weight.'' (Internal quotation marks omitted.)).

The plaintiffs contend that the commission's decisions are not entitled to deference because they merely indicate that the commission applied the rule that payment of disability retirement benefits commences on the first day of the month after receipt of the application, not that it ''evaluated'' that rule. In one of the cases, however, the applicant claimed that, as the result of a settlement with a workers' compensation carrier, the applicant was eligible for disability retirement benefits on a date considerably earlier than the settlement date and the date on which the applicant applied for benefits. The exhibit states that ''[t]he [c]ommission *decided* that the retirement benefits could not commence until the first of the month after the [m]ember applied for retirement benefits . . . .'' (Emphasis added.) Although the exhibit does not expressly indicate that the commission engaged in a thorough reexamination of its interpretation of the act, the commission presumably considered arguments why that interpretation was incorrect. In any event, the plaintiffs have cited no authority for the proposition that, for an agency's interpretation to be considered time-tested, every application of the interpretation in an adjudicatory proceeding must be subject to a challenge. An agency's interpretation of a statute is time-tested if it ''has been formally articulated and applied for an extended period of time . . . .'' (Internal

Crandle *v.* Connecticut State Employees Retirement Commission

quotation marks omitted.) *Tuxis Ohr's Fuel, Inc.* v.
*Administrator, Unemployment Compensation Act*,
supra, 309 Conn. 422.

For similar reasons, we also conclude that *Tilcon
Connecticut, Inc.* v. *Commissioner of Environmental
Protection*, supra, 317 Conn. 628, does not support the
plaintiff's claim that the commission's interpretation is
not entitled to deference because it is not time-tested.
In that case, the defendant, the Commissioner of Envi-
ronmental Protection, claimed that the interpretation
of the Department of Environmental Protection (depart-
ment) of the Connecticut Water Diversion Policy Act,
General Statutes § 22a-365 et seq., was entitled to defer-
ence because it had "(1) consistently required informa-
tion from other applicants for water diversion permits
that was similar to the category and extent of informa-
tion [requested of the plaintiff]; and (2) consistently
evaluated the direct *and indirect* effects of proposed
diversions in acting on diversion permit applications.
In support of this claim, the department submitted
excerpts from various permit review processes, includ-
ing correspondence and other internal memoranda, for
a variety of applicants seeking diversion permits from
the department." (Emphasis in original.) Id., 650. This
court concluded that the department's interpretation
was not entitled to deference because an interpretation
that is set forth only in "private correspondence and
internal documents" has not been formally articulated.[18]
Id., 651. We conclude that the present case is distin-
guishable because the commission has formally articu-

---

[18] We note that, in *Tilcon Connecticut, Inc.*, this court stated that the
interpretations of the Department of Environmental Protection were not
entitled to deference "because they have been neither formally articulated
*nor adopted pursuant to formal rule-making or adjudicatory procedures
. . . .*" (Emphasis added.) *Tilcon Connecticut, Inc.* v. *Commissioner of
Environmental Protection*, supra, 317 Conn. 651. As we explained, however,
this court had not previously held that no deference is given to an agency's
interpretation unless it was adopted pursuant to formal rule-making or
adjudicatory procedures.

Crandle *v.* Connecticut State Employees Retirement Commission

lated its interpretation of the act in adjudicatory procedures. Moreover, after the commission obtained the formal opinion from the attorney general on the question of when payments of disability retirement benefits become payable under the act, the Office of the State Comptroller distributed the opinion to the heads of all state agencies.[19] It is reasonable to conclude that one reason that the Office of the State Comptroller disseminated the memorandum was so that agencies could make the substance of the opinion known to any SERS member who inquired about the date on which disability retirement benefits become payable. Thus, the 1981 attorney general opinion is distinguishable from the "private correspondence and internal documents" to which deference was not afforded in *Tilcon Connecticut, Inc.* Id. We conclude, therefore, that the commission's interpretation of the act is time-tested.

B

We next address the plaintiffs' claim that the trial court incorrectly determined that the commission's interpretation of the act is reasonable. In support of this claim, the plaintiffs contend that the 1981 attorney general opinion, on which the commission's interpretation is premised, conflicts with certain provisions of the 1983 amendments to the act adopting Tier II of SERS, specifically, General Statutes §§ 5-169 (j), 5-192*l* (c) and 5-192p. See Public Acts 1983, No. 83-533, §§ 16, 28 and 32. For the following reasons, we disagree.

In reaching the conclusion that retirement disability benefits are not retroactive to the day following the last date of paid employment, the attorney general relied on the provisions of General Statutes (Rev. to 1981)

---

[19] We note that the commission is "within the Retirement Division of the office of the Comptroller for administrative purposes . . . ." General Statutes § 5-155a (a). Under General Statutes § 4-38f (b), "[t]he department to which an agency is assigned for administrative purposes only shall . . . (2) disseminate for the agency any required notices, rules or orders adopted . . . by the agency . . . ."

Crandle *v.* Connecticut State Employees Retirement Commission

§ 5-162 (c), (d) and (e),[20] General Statutes (Rev. to 1981) § 5-163a (a), (b) and (c),[21] and General Statutes (Rev. to 1981) § 5-169 (c).[22] See Opinions, Conn. Atty. Gen. No. 1981-50, supra, pp. 1–3. On the basis of the provisions of General Statutes (Rev. to 1981) §§ 5-162 (c) and (d), and 5-163a (a), (b) and (c), the attorney general determined that, because a member seeking normal retirement is retired following the member's application, the application is a prerequisite for retirement. In addition,

[20] General Statutes (Rev. to 1981) § 5-162 provides in relevant part: "(c) . . . (1) Except as provided in section 5-163a, each member who has completed twenty-five or more years of state service shall be retired on his own application on the first day of the month named in the application, and on or after the member's fifty-fifth birthday.

* * *

"(d) . . . (1) Except as provided in section 5-163a, each member who has completed less than twenty-five years of state service shall be retired on his own application, on the first day of the month following his application, if the member has completed ten years of state service and reached his sixtieth birthday.

* * *

"(e) Each retirement application shall be made to the retirement commission and, upon its approval, shall be forwarded to the comptroller, who shall draw his orders upon the treasurer for any amounts the applicant is entitled to receive."

[21] General Statutes (Rev. to 1981) § 5-163a provides in relevant part: "(a) Any member who has completed twenty-five years of state service and has reached the age of fifty prior to June 30, 1980, may elect to be retired on the first day of the month following such application and receive retirement benefits in accordance with the provisions of subdivision (3) of subsection (c) of section 5-162, provided such member so elects prior to June 30, 1980.

"(b) Any member who has completed at least ten but less than twenty-five years of state service and reached the age of fifty-five prior to June 30, 1980, may elect to be retired on the first day of the month following his application and receive retirement benefits in accordance with subsection (d) of this section, provided such member so elects prior to June 30, 1980.

"(c) Any member who has completed at least five but less than ten years of state service and has reached the age of sixty-five prior to June 30, 1980, may elect to be retired on the first day of the month following such application and receive retirement benefits in accordance with the provisions of subsection (d) of this section, provided such member so elects prior to June 30, 1980. . . ."

[22] General Statutes (Rev. to 1981) § 5-169 (c) provides in relevant part: "The governor shall appoint a board of seven physicians, each of whom is a state employee and two of whom shall be experienced in psychiatry, to

Crandle *v.* Connecticut State Employees Retirement Commission

under General Statutes (Rev. to 1981) § 5-162 (e), which authorizes the comptroller to "draw his orders upon the treasurer for any amounts the *applicant* is entitled to receive"; (emphasis added); it is the retirement application that triggers retirement payments. With respect to retirement disability benefits, the attorney general determined that the provision of General Statutes (Rev. to 1981) § 5-169 (c) authorizing the board "to determine whether each *applicant* for disability retirement is entitled thereto"; (emphasis added); indicated that an application for retirement is a precondition for retirement.[23] See Opinions, Conn. Atty. Gen. No. 1981-50, supra, p. 2. The attorney general concluded that, because "the disability retirement income is an incident of retirement, it does not begin to accrue prior to retirement." Id., p. 3.

The plaintiffs first contend that the legislature's enactment of §§ 5-169 (j) and 5-192*l* (c) makes it clear that the attorney general's interpretation of the act was incorrect. Specifically, the plaintiffs point out that § 5-169 (j) provides in relevant part that "[a] member's date of disability shall be his last date of active employment by the state prior to such disability or the date as of which his benefits under this section are payable, whichever is earlier. . . ." Section 5-192*l* (c) provides in relevant part: "Notwithstanding any other provision of sections 5-192e to 5-192x, inclusive, to the contrary, if a member's date of retirement, disability, death or termination occurs in the first six months of any calendar year, his monthly retirement income shall in no event be less than that which would have been payable had his date of retirement, disability, death or termination occurred as of December thirty-first of the prior year, and had his final average earnings, credited service, and breakpoint been determined as of that date.

serve at his pleasure as a medical examining board to determine whether each applicant for disability retirement is entitled thereto. . . ."

[23] On October 5, 1981, the Office of the Comptroller distributed the 1981 attorney general opinion to the heads of all state agencies.

Crandle *v.* Connecticut State Employees Retirement Commission

No retroactive payments shall be paid because of such minimum, and *his actual date of retirement, disability, death or termination shall be utilized for all other purposes of the tier II plan.*'' (Emphasis added.) The plaintiffs contend that these provisions clearly establish that, for purposes of determining when payment of disability retirement benefits commences, a member's date of disability retirement is the day after the member's ''last date of active employment by the state prior to such disability,'' at the latest.[24] General Statutes § 5-169 (j).

We are not persuaded. As the trial court observed, § 5-169 (j) specifies the provisions of the act that govern the calculation of the *amount* of retirement disability benefits that the member will receive, based on the date of disability.[25] See General Statutes § 5-169 (j) (''[a] member whose date of disability occurs prior to January 1, 1984, shall have his benefits calculated in accordance with the provisions of law in effect at the time of such occurrence''). Section 5-169 (j) does not specify the date that payment of such benefits will commence. Section 5-192*l* (c) provides that, if a member's date of disability occurs in the first six months of the year and the calcula-

---

[24] The commission contends that, because the plaintiffs did not rely on these specific statutory provisions before the trial court, this claim is not preserved for review. We have some doubt as to whether a party's failure to cite a specific statute in support of its interpretation of a related statute before the trial court precludes the party from arguing that the previously uncited statute supports its interpretation on appeal. We conclude that we need not determine whether this claim was preserved, however, because the plaintiffs cannot prevail on it. See, e.g., *Blumberg Associates Worldwide, Inc.* v. *Brown & Brown of Connecticut, Inc.*, 311 Conn. 123, 157–58, 84 A.3d 840 (2014) (''[r]eview of an unpreserved claim may be appropriate . . . when the minimal requirements for review are met and . . . the party who raised the unpreserved claim cannot prevail'' (citation omitted; emphasis omitted; footnote omitted)).

[25] In their reply brief, the plaintiffs contend that, in § 5-169 (j), ''date of disability'' is used to calculate the amount of the retirement disability benefit only with respect to Tier I, not Tier II. Section 5-169 (j) specifies, however, whether the provisions of Tier I or Tier II apply for purposes of calculating the amount of the benefit.

Crandle *v.* Connecticut State Employees Retirement Commission

tion of the amount of the member's disability retirement benefit on the date of disability is less than it would have been if the date of disability had occurred before December 31 of the prior year, the amount will be calculated as of the latter date. Nothing about § 5-192*l* (c) suggests that the date of disability *is* the date of disability retirement or that the "other purposes" of the act to which the statute refers include the date that payment of disability retirement benefits commences. Indeed, both §§ 5-169 (j) and 5-192*l* (c) *distinguish* the date of retirement from the date of disability. See General Statutes § 5-169 (j) (referring separately to "date of disability" and "date as of which [disability retirement] benefits . . . are payable," thereby implying that dates are different); General Statutes § 5-192*l* (c) (referring separately to "date of retirement" and "date of . . . disability," thereby implying that dates are different). Moreover, if the legislature had intended to mandate the payment of disability retirement benefits commencing on the day after the last day of paid employment, we cannot conceive why it would have done so in this roundabout way instead of expressly stating the date that payment commences.

The plaintiffs further contend that § 5-192p (a) implies that disability retirement benefits become payable on the day after the member's last day of paid employment. Section 5-192p (a) provides in relevant part that, "[i]f a member of tier II, while in state service, becomes disabled as defined in subsection (b) of this section, prior to age sixty-five, he is eligible for disability retirement if the member has completed at least ten years of vested service. . . ." We conclude that this statute merely sets forth the conditions for eligibility for disability retirement benefits; it does not provide that the date of eligibility and the date that benefits become payable are identical.

Finally, if the legislature had intended to overrule the 1981 attorney general opinion when it enacted the 1983

Crandle *v.* Connecticut State Employees Retirement Commission

amendments adopting Tier II of SERS, it presumably would have amended the act to ensure that the same rule would apply to members subject to § 5-169, governing Tier I disability retirement benefits. The plaintiffs have made no claim that that is the case. We conclude, therefore, that the 1983 amendments do not clearly indicate that the attorney general's interpretation of the act was incorrect. Rather, the act is silent on the question of when disability retirement benefits commence.[26]

In light of this silence, we acknowledge that the express provisions of the act do not *compel* the interpretation set forth in the attorney general's opinion and adopted by the commission. We agree with the plaintiffs, for example, that the fact that an application is a prerequisite for payment of disability retirement benefits—which the plaintiffs have never denied—does not, ipso facto, compel the conclusion that retroactive payment of the benefits is prohibited. Nevertheless, we conclude, for the following reasons, that the commission's position that disability retirement benefits are payable on the first day of the month following application is reasonable.

First, the express terms of the act provide that, for normal retirement,[27] early retire-

___

[26] In reaching this conclusion, we acknowledge that the act is complex and hardly a model of clarity. For example, § 5-169 (j) provides in relevant part that "[a] member's date of disability shall be his last date of active employment by the state prior to such disability or the date as of which his benefits under this section are payable, *whichever is earlier.* . . ." (Emphasis added.) It is unclear to us how a member's disability retirement benefits could be payable earlier than his last date of active employment (which, according to the plaintiffs, means last date of *paid* employment) when the parties in the present case agree that a member cannot receive employment compensation and retirement benefits at the same time. See footnote 32 of this opinion. We note that the plaintiffs contend that, for purposes of § 5-169 (j), the phrase "date as of which [a member's] benefits . . . are payable" means the date that the member filed his application for benefits. They cite no authority in support of this claim, which would be inconsistent with their claim that disability retirement benefits are payable the day after the last day of paid employment. They also do not explain how a member could file an application for disability retirement benefits earlier than his last day of paid employment.

[27] General Statutes § 5-162 (c), governing Tier I normal retirement for members with twenty-five or more years of service, provides in relevant

Crandle *v.* Connecticut State Employees Retirement Commission

ment[28] and hazardous duty retirement,[29] retirement part: "(1) Except as provided in section 5-163a, each member who has completed twenty-five or more years of state service shall be retired on his own application on the first day of the month named in the application, and on or after the member's fifty-fifth birthday.

"(2) Each member who has completed twenty-five or more years of state service and has reached his seventieth birthday and who is in an appointive position shall continue in service and shall be retired on the first day of the month on or after his seventieth birthday, upon notice from the Retirement Commission to the member, to the executive head of his agency and the Comptroller.

"(3) Each member referred to in subdivisions (1) and (2) of this subsection shall receive a monthly retirement income beginning on his retirement date . . . ."

Although § 5-162 (c) does not specify that the "day of the month named in the application" must be *after* the date of the application, the 1981 attorney general opinion presumes that that is the case, and neither the plaintiffs nor the commission has suggested otherwise.

General Statutes § 5-162 (d), governing Tier I normal retirement for members with fewer than twenty-five years of service, provides in relevant part: "(1) Except as provided in section 5-163a, each member who has completed less than twenty-five years of state service shall be retired on his own application, on the first day of the month following his application, if the member has completed ten years of state service and reached his fifty-fifth birthday.

"(2) Each such member in an appointive position who has reached his seventieth birthday shall continue in service and shall be retired on the first day of the month on or after his seventieth birthday, upon notice from the Retirement Commission to the member, the executive head of his agency and the Comptroller.

"(3) Each member referred to in subdivisions (1) and (2) of this subsection shall receive a monthly retirement income beginning on his retirement date . . . ."

General Statutes § 5-192*l*, governing Tier II normal retirement, provides in relevant part: "(a) Each member of tier II who has attained age sixty-five and has completed ten or more years of vesting service may retire on his own application on the first day of any future month named in the application. Benefits shall be payable from that date provided the member is no longer in state employment.

"(b) Each member of tier II who has attained age seventy and has completed five or more years of vesting service shall be retired on the first day of the month coincident with or, otherwise, immediately following his seventieth birthday, except as provided in subsection (e) of this section.

"(c) Each member of tier II referred to in subsections (a) and (b) of this section shall receive a monthly retirement income beginning on his retirement date . . . ."

[28] General Statutes § 5-192m (a), governing Tier II early retirement, provides: "Each member of tier II who has attained age fifty-five and has completed ten or more years of vesting service, shall be retired on his own application on the first day of any future month named in the application. Benefits shall be payable from that date provided the member is no longer in state employment."

[29] General Statutes § 5-192n provides in relevant part: "(a) Each 'hazardous duty member' who has completed twenty-five years of credited service while a hazardous duty member may be retired on his own application on the first day of any future month named in the application. . . .

Crandle *v.* Connecticut State Employees Retirement Commission

occurs after the date that an application is filed, and payment of retirement benefits commences on the day of retirement. Although the act does not expressly state when disability retirement occurs or when payment of disability retirement benefits commences, it is reasonable for the commission to treat disability retirement consistently with these other forms of retirement.[30]

Second, the provisions of the act were negotiated by the state and representatives of the state employee unions pursuant to collective bargaining and were submitted to the legislature for approval and codification pursuant to § 5-278 (b). State employers and the unions have presumably been aware of the 1981 attorney general opinion, which was distributed to the heads of all state agencies, as well as the commission's decisions applying its interpretation of the act with respect to the date that normal and disability retirement benefits become payable, and neither party has sought to renegotiate the agreement or to amend the provisions of the act to reflect a different understanding. In addition, the legislature is presumed to be aware of the interpretation given to statutes by the attorney general and administrative agencies, and it has not given any indication that it had a different understanding of the agreement

"(b) Each member referred to in subsection (a) of this section shall receive a monthly retirement income beginning on his retirement date . . . ."

[30] The plaintiffs suggest that the fact that the provisions governing disability retirement, unlike the provisions governing normal retirement, early retirement and hazardous duty retirement, do not expressly specify the date of retirement and the date that payment of retirement benefits commences shows that the intent of the act was to treat disability retirement differently. If that were the case, however, we cannot conceive why the parties who negotiated the provisions of the act and the 1983 amendments adopting Tier II would have chosen to remain *silent* on the question of when disability retirement occurs and when benefits become payable instead of specifying when those events occur. It is more reasonable to conclude that this silence was a legislative oversight than to conclude that the legislature differentiated disability retirement from the other forms of retirement by intentionally remaining silent on this issue, thereby giving rise to the present uncertainty and confusion.

Crandle *v.* Connecticut State Employees Retirement Commission

that the parties submitted to it for approval, even though the legislature has amended the act several times since 1981. See *Berkley* v. *Gavin*, 253 Conn. 761, 776 n.11, 756 A.2d 248 (2000) ("we have applied [the] doctrine of legislative acquiescence to administrative interpretations of statutes"); *Housing Authority* v. *Dorsey*, 164 Conn. 247, 253, 320 A.2d 820 ("[w]e . . . construe the legislature's failure to amend [General Statutes (Rev. to 1973)] § 8-42 after the attorney general's opinion that the statute barred tenants from being commissioners as an indication of legislative intent that tenants should not be placed in a position [in which] they could control housing authorities in whose properties they were tenants"), cert. denied, 414 U.S. 1043, 94 S. Ct. 548, 38 L. Ed. 2d 335 (1973); see also *State* v. *Salamon*, 287 Conn. 509, 525, 949 A.2d 1092 (2008) ("[l]egislative concurrence is particularly strong [when] the legislature makes unrelated amendments in the same statute" (internal quotation marks omitted)).

Third, we are not persuaded by the plaintiffs' argument that the commission's interpretation of the act "punishes injured members who attempt to recover." The plaintiffs posit "two employees, one [A] who [after his last day of paid employment] attempts rehabilitation through physical therapy or other treatment before sending in the application for disability retirement. Another employee [B] leaves work and immediately files for benefits, making no attempt to regain the ability to work. The second employee will receive more in state retirement benefits because there will be no gap between initial injury or sickness and application for pension benefits." The reason that employees A and B are treated differently in this scenario, however, is that A believed that he could not establish that he was entitled to disability retirement benefits immediately after his last date of paid employment, whereas B was in

Crandle *v.* Connecticut State Employees Retirement Commission

fact able to do so.[31] If B *could* continue the service
for which he was employed, he would not qualify for
disability retirement benefits at any time, notwithstand-
ing the fact that he filed an application for disability
retirement benefits immediately after his last day of
paid employment. If A believed as of his last day of
paid employment that it was unlikely that he would be
able to return to work but was uncertain whether he
had sufficient information to establish that fact, that
uncertainty would not prevent him from submitting an
application the next day, if he so chose.[32] See Regs.,

[31] Under § 5-192p (b), which governs Tier II disability retirement, "[a]
member is disabled for the first twenty-four months [after retirement] if he
is permanently unable to continue to render the service in which he has been
employed. Disability retirement continues thereafter only if such member
is totally disabled for any suitable and comparable job."

[32] The commission points out that SERS members are entitled to state
service credit for certain forms of unpaid leave. It contends that, if the
period during which a member was entitled to receive payment of disability
retirement benefits overlapped with the period for which the member was
entitled to receive state service credit, as a general rule, the member could
not both receive payment of the benefits and credit for state service during
the period of overlap, a practice known as "double dipping." Cf. General
Statutes § 5-192*l* (a) ("[b]enefits [for normal retirement] shall be payable
from [the first day of any future month named in the application] provided
the member is no longer in state employment"); General Statutes § 5-192v
(b) ("[n]o [retired] member reemployed [by the state on a permanent basis]
. . . shall receive a retirement income during such member's reemployment
or other state service," with certain exceptions); see also General Statutes
§ 5-192i (f) ("[i]f an employee is absent from the service of the state due to
a work-related injury or disease for which periodic workers' compensation
cash benefits are payable, the period of such absence shall not count as a
break in service and shall be considered vesting service"). According to the
commission, § 5-192p (h) provides an exception to this rule. See General
Statutes § 5-192p (h) ("if the member recovers from such disability prior to
reaching what would have been his normal retirement date . . . such mem-
ber shall receive credit for both vesting and credited service purposes for
the years he was disabled").

The commission claims that the plaintiffs' position that disability retire-
ment benefits are payable commencing on the day after the last day of paid
employment would be unworkable because it would result in double dipping
whenever a member took an unpaid leave for which he received state service
credit after his last day of paid employment and later filed an application
for retirement disability benefits that was granted. It is unclear to us, how-

Crandle *v.* Connecticut State Employees Retirement Commission

Conn. State Agencies § 5-155a-2 (d).[33] If the board

ever, that starting payment of retirement disability benefits on the first day of the month after receipt of the application would be the only way to avoid double dipping under these circumstances. If the plaintiffs were correct that payment of disability retirement benefits commences on the day after the last day of paid employment, the commission might adopt a rule that would give the member a choice between (1) receiving state service credit for the leave period and payment of retirement benefits starting the day after the last day of leave, or (2) receiving payment of retirement benefits starting the day after his last day of paid employment, but no state service credit. Alternatively, the commission might adopt a blanket rule barring either receipt of state service credit or payment of retirement benefits during the period of overlap.

Indeed, under the rule that payment of disability retirement benefits commences on the first day of the month after receipt of the application, the commission's suggestion that a member cannot file an application for retirement benefits and simultaneously take an unpaid leave that entitles the member to service credit creates a dilemma for a SERS member who, as of his last day of paid employment, is uncertain whether he qualifies for disability retirement benefits. Although the commission's position that retirement disability benefits are payable commencing on the first day of the month after receipt of the application creates an incentive for the member to file an application for disability retirement benefits as soon as possible after the last day of paid employment to maximize benefits if the application is ultimately granted, applying early in lieu of taking an unpaid leave would potentially deprive the member of state service credit to which he would otherwise have been entitled if the application is ultimately denied.

We note that the plaintiff's claim that the statutes cited by the commission prohibit only the simultaneous receipt of *employment compensation* and retirement benefits, not the simultaneous receipt of state service credit and retirement benefits. In support of this claim, they rely only on § 5-192p (h), which, according to the commission, provides an *exception* to the general rule that a member cannot receive state service credit and retirement benefits for the same period. Because we would conclude that the commission's position that disability retirement benefits become payable on the first day of the month after receipt of the application is reasonable regardless of which of these positions on the double dipping question is correct, and because the parties have not comprehensively briefed these issues, we decline to resolve them here.

[33] Section 5-155a-2 (d) of the Regulations of Connecticut State Agencies provides in relevant part: "The time period for filing an application for disability retirement benefits or petition for service connected disability retirement shall begin on the day after the applicant's last day of paid employment by the State of Connecticut and shall end at close of business on the date that is twenty-four months after the applicant's last day of paid employment."

Crandle *v.* Connecticut State Employees Retirement Commission

denied the application, the member would have one year in which to file a motion for reconsideration. See id., § 5-155a-2 (f).[34] The member would then have one year from the date that he sought reconsideration to submit additional information to the board about his medical condition on the last day of employment and an explanation as to why the information was not available at the time of the original application. See id., § 5-155a-2 (g).[35] Thus, a member who filed an application the day after his last day of paid employment, even though he was not certain at that time that he could establish that he was qualified to receive disability retirement benefits, would have up to two years after his application was denied to obtain additional information to support the application. Although the member would admittedly have less time to obtain information supporting his application than a member who waited for two years after his last date of paid employment to file an application would have, we are not persuaded that that fact renders the commission's interpretation unreasonable.[36] We further note that an employee who

[34] Section 5-155a-2 (f) of the Regulations of Connecticut State Agencies provides: "The member shall have one (1) calendar year from the date of the Board's decision of denial to seek reconsideration of said decision. If the member does not seek reconsideration of the Board's decision of denial within said one (1) calendar year, the Board's initial decision of denial shall stand. The decision of denial shall be brought before the Commission for its approval as administratively denied."

[35] Section 5-155a-2 (g) of the Regulations of Connecticut State Agencies provides: "The member shall have one year from the date he or she sought reconsideration to: (1) submit the requested records (if any); and (2) submit additional material facts concerning his or her medical condition at the date of termination of employment; and (3) explain in writing why such material facts were not available to the member at the time of his or her original application to the Board. If the member does not provide the above information within one (1) calendar year of the date of seeking reconsideration, the Board's initial decision of denial shall stand. The decision of denial shall be brought before the Commission for its approval as administratively denied."

[36] We acknowledge that a member who sits on his rights and, without good reason, fails to file an application for disability retirement benefits, even though he clearly qualifies for them, would lose benefits for the period

Crandle *v.* Connecticut State Employees Retirement Commission

takes an unpaid leave before filing an application because he is uncertain whether he will be able to return to work and who ultimately receives disability retirement benefits is in no worse a position than an employee who takes an unpaid leave and ultimately returns to work. Both will be unpaid during the period they are on leave. Finally, we note that an uncodified addendum to the SERS agreement governing disability retirement benefits provides that, if the board ultimately denies the member's application, the agency in which the member was last actively employed is required to return the applicant to employment. Thus, the member is not punished for filing an application that is denied.

Fourth, making disability retirement benefits payable on the first day of the month after an application is received allows the state to predict at any given time its potential liability for payment of such benefits. If a member could be paid benefits retroactively to a date up to two years before receipt of the application, the state could be subject to sudden, unforeseen increases in liability.[37] Moreover, if the rule were now changed,

of delay. We cannot conclude, however, that that fact renders the commission's interpretation unreasonable. We also note that the commission has recognized certain exceptions to the rule that benefits are payable on the first day of the month after receipt of the application when the application is delayed through no fault of the member. See footnote 17 of this opinion.

[37] The commission further contends that, under the plaintiff's interpretation, "there would be no incentive for the employing agency to work with the member to determine if [he] could return to work [because] the member will claim disability retirement benefits from the last day [he was] physically on the job." The commission points out that, during many types of leave, "the member's job is protected as [he attempts] to recover from a temporary disability and return to work." See, e.g., 29 U.S.C. § 2614 (2018) (providing certain protections to employees who takes leave because of health condition); General States § 31-51nn (a) (providing certain protections to employees who takes medical leave). According to the commission, if the member were entitled to disability benefits from the day after the last day of paid employment, the employing agency would receive no benefit from waiting to see if the employee would return to work and, therefore, would simply "separate" the member immediately, thereby depriving the member of his protected status. We are not persuaded. First, the commission has not

Crandle *v.* Connecticut State Employees Retirement Commission

the state could be subject to claims for retroactive payments from members who are already retired.

Finally, and perhaps most significant, it is appropriate for this court to give great deference to the commission's reasonable interpretation in light of the gap that the legislature left in the act on this issue: the statute does not specify the date on which an employee's disability retirement benefits will begin. See *Silver Lining Group EIC Morrow County* v. *Ohio Dept. of Education Autism Scholarship Program*, supra, 85 N.E.3d 801 ("[a]n agency's reading that fills a gap . . . in a reasonable way in light of the [l]egislature's design controls" (internal quotation marks omitted)). Even if the commission reasonably *could have* adopted the plaintiffs' position, nothing in the act required it to do so, and we ought not substitute our judgment as to which of two reasonable positions is preferable for the judgment of the commission. Accordingly, we conclude that the trial court properly gave substantial deference to the commission's position that disability retirement benefits become payable on the first day of the month after the application is received.

II

We next address the plaintiffs' claim that, as a fiduciary of the plaintiffs, the commission has the burden

explained how the employing agency would know whether a member who takes a leave of absence for health reasons would later file an application for disability retirement benefits. Second, the commission has not explained how an employing agency could prevent an employee from taking a medical leave to which he is entitled by law or why it could simply ignore the laws that are intended to protect such employees. Third, the benefit from not terminating the member immediately would be that the state might not have to pay any disability retirement benefits if the member were able to return to work. Finally, this argument assumes that this issue could not arise under the commission's interpretation of the act because a member cannot file an application for retirement disability benefits on the day after the member's last day of paid employment if the member also takes an unpaid leave of absence. As we already indicated, it is unclear to us whether that is the case. See footnote 32 of this opinion.

Crandle *v.* Connecticut State Employees Retirement Commission

of proving fair dealing by clear and convincing evidence and that it has failed to do so.[38] The commission contends that, because this is an administrative appeal, not a civil action for breach of fiduciary duty, the burden is on the plaintiffs to demonstrate that the commission's interpretation of the act is incorrect. We conclude that the commission did not have the burden of proving fair dealing by clear and convincing evidence.

We begin with a review of the governing law. General Statutes § 5-155a (c) provides in relevant part that the commission "shall have general supervision of the operation of the retirement system, shall conduct the business and activities of the system, in accordance with this chapter and applicable law and each trustee shall be a fiduciary with respect to the retirement system and its members. . . ." "This court has instructed that . . . [a] fiduciary or confidential relationship is characterized by a unique degree of trust and confidence between the parties, one of whom has superior knowledge, skill or expertise and is under a duty to represent the interests of the other. . . . The superior position of the fiduciary or dominant party affords him great opportunity for abuse of the confidence reposed in him." (Internal quotation marks omitted.) *Iacurci* v. *Sax*, 313 Conn. 786, 800, 99 A.3d 1145 (2014). "Once a [fiduciary] relationship is found to exist, the burden of proving fair dealing properly shifts to the fiduciary. . . . Furthermore, the standard of proof for establishing fair dealing is not the ordinary standard of fair preponderance of the evidence, but requires proof either by clear and convincing evidence, clear and satisfactory evidence or clear, convincing and unequivocal evidence."

_____

[38] We note that, although the plaintiffs raised this claim in their briefs to the trial court, the trial court did not address it. The commission contends that the claim is not reviewable because the plaintiffs did not allege a breach of fiduciary duty in their initial appeal to the trial court. We conclude that we need not determine whether the plaintiffs' claim is reviewable because they cannot prevail. See footnote 24 of this opinion.

Crandle *v.* Connecticut State Employees Retirement Commission

(Internal quotation marks omitted.) *Murphy* v. *Wakelee*, 247 Conn. 396, 400, 721 A.2d 1181 (1998).

"[I]t is only when the confidential relationship is shown together with suspicious circumstances, or [when] there is a transaction, contract, or transfer betweenpersons in a confidential or fiduciary relationship, *and* [*when*] *the dominant party is the beneficiary of the transaction, contract, or transfer*, that the burden shifts to the fiduciary to prove fair dealing." (Emphasis added; internal quotation marks omitted.) *Cadle Co.* v. *D'Addario*, 268 Conn. 441, 456, 844 A.2d 836 (2004); see id. ("*if the superior party obtains a possible benefit*, equity raises a presumption against the validity of the transaction or contract, and casts upon such party the burden of proving fairness, honesty, and integrity in the transaction or contract" (emphasis in original; internal quotation marks omitted)); id., 457 ("when a breach of fiduciary duty is alleged, and the allegations concern fraud, self-dealing or a conflict of interest, the burden of proof shifts to the fiduciary to prove fair dealing by clear and convincing evidence").

The plaintiffs in the present case appear to claim that the commission was required to prove by clear and convincing evidence that its use of "an unwritten practice . . . to set a start date for disability benefits" was fair to the plaintiffs. The plaintiffs contend that "[a]n unwritten policy could lead to inconsistent and arbitrary decisions" and "does not give fair notice to employees who are contemplating disability retirement." The plaintiffs also claim that the substance of the commission's rule is unfair insofar as it punishes SERS members who do not file an application for disability retirement benefits immediately after their last day of paid employment because they are uncertain whether they can establish that they qualify. Even if we were to assume, however, that the plaintiffs established a prima facie

case with respect to these issues,[39] the plaintiffs have not claimed that the commission took advantage of its fiduciary relationship with SERS members to benefit itself. We conclude, therefore, that the burden did not shift to the commission to prove fair dealing by clear and convincing evidence.[40] See, e.g., *Cadle Co.* v. *D'Addario*, supra, 268 Conn. 456–57 (fiduciary is required to prove fair dealing by clear and convincing evidence only if plaintiff alleges that fiduciary obtained benefit from alleged wrongdoing). We further note that, even if we were to conclude that it was unfair of the commission to apply its interpretation of the act to the plaintiffs because it was not expressly set forth in the act or any regulation, it is unclear to us what the remedy would be. It would be anomalous to conclude that the commission must apply the plaintiffs' interpretation, which also is not expressly set forth in the act or regulations. Accordingly, even if we were to assume, without deciding, that the commission's application of a time-tested and reasonable rule that fills a gap in the act could conceivably constitute an abuse of its fiduciary relationship

---

[39] As we explained, the Office of the Comptroller distributed the 1981 attorney general opinion, which provides the basis of the commission's interpretation, to the heads of all state agencies, presumably so that the agencies can provide this information to any SERS member who inquires about the issue. Moreover, there is no evidence that the commission has applied this interpretation inconsistently. Indeed, the only evidence is to the contrary. We also concluded that the plaintiffs have failed to establish that the commission's rule is punitive to SERS members who do not file an application for disability retirement benefits immediately after their last day of paid employment.

[40] We are aware of no authority for the proposition that a different rule applies when a fiduciary is administering a pension or healthcare plan and the benefit to the fiduciary may be somewhat attenuated. See, e.g., *Roth* v. *Sawyer-Cleator Lumber Co.*, 16 F.3d 915, 917 (8th Cir. 1994) (under Employee Retirement Income Security Act of 1974, "plaintiffs bear the burden of proving a breach of fiduciary duty and a prima facie case of loss to the plan"); *Rodrigues* v. *United Public Workers, AFSCME Local 646, AFL-CIO*, 135 Haw. 316, 319, 349 P.3d 1171 (2015) (plaintiffs demonstrated by preponderance of evidence that administrator of union's healthcare benefit plan breached his fiduciary duty to participants).

with SERS members, and that a claim of breach of fiduciary duty may be raised in an administrative appeal, we conclude that the plaintiffs have not made a colorable claim that that is the case here.

The judgment is affirmed.

In this opinion the other justices concurred.

———————————————